JOSEPH McCORKELL, Appellant, v. JOSEPH KARHOFF,. L. M. HARTLEY *et al.*

**Sale: Breach of Warranty.** A warranty that a stallion sold for breeding purposes is, "a foal getter," is, not satisfied by his getting eight colts on fifty-five services, with proper handling. (1)

SAME : SUIT IN EQUITY TO RESCIND. Where the relief sought is purely equitable, and it was agreed to try the suit in equity, it will lie there, though an action at law for breach of warranty could, as well, have been maintained. (3)

SAME: TENDER. In such equity suit, an allegation that plaintiff is in a position and offers to restore the property had of the defendant, is a sufficient tender. (4)

**Pleading, Waiver of Defect in.** An objection that oral representations should not be allowed to vary a written warranty, is waived by failure to attack a petition setting up such a variance. (2)

**Fraud in Sale.** Fraud is clearly established where the property during the period it was owned by the seller, at no time, equalled his representations, when selling, as to its qualities. (1)

*Appeal from Plymouth District Court.*—Hon. SCOTT M. LADD, Judge.

FRIDAY, MAY 11, 1894.

ACTION to rescind the contract for the sale of a horse, and cancel a conveyance of land. From a judgment dismissing the petition, the plaintiff appealed.— *Reversed.*

*Lewis & Holmes* for appellant.

*Sawyer & Taft* for appellees.

GRANGER, C. J.—I. On the seventh day of January, 1890, the defendant Hartley sold to Howard Mc-Corkell (a son of the plaintiff) a stallion named Hero for the agreed price of one thousand, eight hundred dollars, and two mares for five hunded dollars. In a bill of sale, the stallion was warranted to be "sound and healthy, and, with proper handling, a foal getter." In the petition, besides the averments of a breach of the warranty, it is averred that, to induce McCorkell to purchase the stallion, Hartley verbally represented the stallion to be a sure foal getter, and that he had personal knowledge of the fact that he was, upon which representations McCorkell relied in making the purchase; that the representations were false, and known to be so by Hartley, when made. In payment for the horses, the· plaintiff conveyed to the defendant Karhoff one hundred and sixty acres of land, which Karhoff has since conveyed, by quitclaim deed, to Hartley. The consideration for the land, besides the horses, was the payment of a note for three hundred and fifty dollars held by Hartley, on which the plaintiff was a surety.

The plaintiff now offers to restore the property received from Hartley, and asks a rescission of the contract of sale, and a cancellation of the deeds under which Hartley has title to the land. Without objection, the issues have been joined, and a trial had in equity, under averments both as to the warranty and fraudulent representations, and it should be so tried in this court. There is no question but that the horse was sold for service as a stallion. There is dispute, in argument, as to the legal import of the warranty, wherein the horse is warranted, "with proper handling, a foal getter." Appellee's construction seems to be that, if the horse could or "did get foals," the terms of the warranty are met. We are to construe the language of the instrument in the light of the manifest understanding of the parties at the time it was made, and that understanding may be known from the purposes of the sale, as then understood by both parties. As we have said, the horse was bought for service as a stallion, and the warranty was made under a mutual understanding to that effect. Hartley surely understood that McCorkell accepted the warranty as of broader meaning than that any trifling per centage of foals would meet its requirements. He must have known that the warranty was accepted as meaning that the horse was a reasonably sure or safe foal getter. If so, whatever may have been his understanding, he is bound by the understanding of the other party. By Code, section 3652, it is provided: "When the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other understood it."

We think it was a warranty that the horse could do reasonable service as a foal getter, in view of the fact that he was bought exclusively for such a use. The horse did not meet the requirements of the warranty. With proper handling for the season of 1889,

out of fifty-five mares served, but seven or eight were with foal. The horse was used under conditions to fairly test his capacity under the warranty, and the result was a demonstration that he was not as warranted. We think the representations were also fraudulent. The conveyances were made at the office of Hart & Rishel, at Le Mars, Iowa. Mr. Rishel is a witness, and he says that at the time "Hartley said that the horse was a sure foal getter, and one of the best horses for breeding purposes in Iowa or in the northwest." This is but one of several statements, somewhat similar, made at different times; and there is no doubt, to our minds, that they operated largely to induce plaintiff to execute the conveyance. As indicative of the reluctance of plaintiff to make the deed, and of the purpose of Hartley to induce him to do so, he asked Rishel to, if he could, induce him to make it, and offered him twenty-five dollars for his services, which proposition was declined. At one time he said to the plaintiff, before the execution of the deed, that "the horse could serve eighty or ninety mares, and that he would pay a man a thousand dollars a year in any country." It is manifest that these representations induced plaintiff to execute the conveyances of the land. That they were known to be untrue is a fact hardly open to doubt. Hartley owned the horse in 1887, when he served about fifty mares, and it seems very uncertain how many foals he got. In August, 1887, he was sold to one Schwab, in Kansas, who kept him until November, 1888. In that time he served thirty-three or thirty-four mares, and got fifteen foals; and, because of the failure of the horse to do proper service, the contract was rescinded, and the horse shipped to Iowa, and sold to McCorkell. At no time while Hartley owned the horse had he proved himself equal to the representations made to induce the sale, unless it was in 1886, when, out of the

small number of twelve mares, ten were with foal. If he then was a good foal getter, this decline commenced the next year, and continued to the year 1889; and the fact, up to November, 1888, was known to Hartley, when he sold the horse. The fraud in the sale of the horse is clearly established.

II. It is said that the oral representations can not be considered, because the warranty was in writing. If so, the defect was manifest on the face of the petition, and it should have been attacked by motion or demurrer, and not on issue taken, and objections made on the trial. In fact, the trial seems to have proceeded below on the entire issue, as made.

III. It is said that equity will not grant the relief prayed, because the law furnishes an adequate remedy in an action for a breach of the warranty. The relief sought was such as a court of equity, only, could grant; and by the abstract it appears that, after the issues were formed, it was agreed to try them as an equitable action. Under such circumstances the rule contended for is not to be applied, even though it otherwise could be.

IV. It is contended that there was no tender of the property received from Hartley for the land. The petition specifies that the "plaintiff is in the attitude to restore all of said property," and, in terms, tenders the same to Hartley. In an equity action no more is necessary. *Taylor v. Ormsby*, 66 Iowa, 112, 23 N. W. Rep. 288; *Binford v. Boardman*, 44 Iowa, 53.

There should be a decree rescinding the contract of sale, and canceling the deeds of conveyance to Karhoff and Hartley upon a return of the property received for the land, and the cause is remanded for that purpose. Reversed.