JOSEPH WATSON v. ORANGE A. ROODE.

FILED JANUARY 4, 1895.    No. 5037.

1. **Sale of Horse:** BREACH OF WARRANTY: ACTION FOR DAM-
AGES.    The law in relation to warranty, applicable to the facts
in this case, and also to the admissibility of certain parol testi-
mony in regard to the warranty that the horse was registered,
having been stated upon a former hearing in this court, and
being approved and adhered to, will not be restated in the syl-
labus.

Watson v. Roode.

2. ——: ——: INSTRUCTIONS. Instructions requested by defendant in error, and action of trial court in giving them, approved.

3. Witnesses: EVIDENCE: INSTRUCTIONS. Instructions offered by plaintiff in error *held* properly refused.

4. Trial: NOTES OF TESTIMONY BY JUROR: EXCEPTIONS: REVIEW. Where it is sought to present to the court for determination the question of the right of jurors to take notes or copies of portions of testimony and carry them to their room to be used during their deliberations, and it does not appear from the showing of facts made, nor from the record, that the party complaining, or his counsel, had no knowledge of such actions of the jurors before they retired or before they returned their verdict, the showing is insufficient to present the main point for consideration and decision.

5. Costs: ORDER FOR SECURITY: REVIEW: HARMLESS ERROR. A defendant, during the pendency of an action in which plaintiff had given security for costs, made a motion for an order to the plaintiff requiring him to furnish additional security for costs. *Held*, That after judgment rendered against defendant, including costs, it will not be reversed because of the denial of such motion, as it is not prejudicial or injurious to the rights of defendant.

ERROR from the district court of Gage county. Tried below before BROADY, J.

The opinion contains a statement of the case.

*R. S. Bibb*, for plaintiff in error:

There is no warranty of soundness in the instrument sued on.

When a party sells a horse and warrants as to particular defects, his warranty is confined to those defects. (*Richardson v. Brown*, 1 Bing. [Eng.], 344; *Budd v. Fairmauer*, 8 Bing. [Eng.], 48, and cases cited; *Anthony v. Halstead*, 37 L. T., n. s. [Eng.], 333; Benjamin, Sales [ed. 1889], sec. 935.)

The taking of notes by the juror was error. (*Cheek v.*

*State,* 35 Ind., 492; *Eden v. Lingenfelter,* 39 Ind., 19; *Lotz v. Briggs,* 50 Ind., 346; *Watson v. Davis,* 7 Jones Law [N. Car.], 178; *Burton v. Wilkes,* 66 N. Car., 604.)

*J. E. Bush,* also for plaintiff in error.

*Griggs & Rinaker* and *Alfred Hazlett, contra:*

The statement in the warranty as to the effect of the injury to the horse must be held to be such a guaranty as to make the seller liable in damages, in case the horse should be lessened in value because of the injury. While the injury was one that left its outward sign, easily to be observed, its effect was internal, and hence the purchaser was not charged with notice of its extent. (*Shewalter v. Ford,* 34 Miss., 417; *Fisher v. Pollard,* 2 Head [Tenn.], 314; *Thompson v. Botts,* 8 Mo., 710; *Callaway v. Jones,* 19 Ga., 277; *Watson v. Roode,* 30 Neb., 264; Benjamin, Sales, p. 611.)

The warrantor should not be permitted to vary his warranty by parol. (*Pinney v. Andrus,* 41 Vt., 631; *First Nat. Bank of Kansas City v. Grindstaff,* 45 Ind., 158; *Fletcher v. Young,* 69 Ga., 591; Benjamin, Sales, p. 611.)

In the absence of a showing to the contrary it will be presumed that the defendant consented to the taking of notes by the juror. (*Long v. State,* 95 Ind., 481; 2 Thompson, Trials, sec. 2585.)

A party who sees a juror taking notes and does not object is not entitled to a new trial on that ground. (*Watson v. Walker,* 23 N. H., 472; *Little Schuylkill Navigation, Railroad & Coal Co. v. Richards's Administrator,* 57 Pa. St., 142; *Greff v. Blake,* 16 Ia., 222; *Mercer v. Harris,* 4 Neb., 85.)

HARRISON, J.

In an action which defendant in error had commenced in the district court of Gage county there was filed in his

behalf February 3, 1887, an amended petition, which was in words and figures as follows:

"1. The plaintiff complains of the defendant for that on the 18th day of November, 1884, the defendant, as an inducement to plaintiff to purchase from him, said defendant, a certain imported black stallion called Knight of the Shires, for the sum of $2,000, said defendant warranted the said horse to be a foal getter and sound in every respect, except an enlargement of said horse's bag, which was caused by a kick, and represented the said horse as being then and there sound; that the title to the same was clear, and that said horse was registered in the stud book of England, as well as his dam and sire, and would furnish the secretary's receipt for such pedigree; and plaintiff, relying on said warranty and statements, purchased said horse from the defendant for the sum of $2,000 then duly paid.

"2. Plaintiff avers that said horse, at the time of said sale, was unsound in this, that the enlargement of said horse's bag was hernia at the time of said sale, and in no way was he free from difficulty or trouble, and was of no value whatever; that one testicle of said horse was mashed and completely ruined, and was of no benefit to the said horse, and on account of said hernia, mashed testicle, and urethral gleet, all of which the said horse had at the time of the purchase, combined, caused the death of said horse, to-wit, on the 16th day of June, 1886.

"3. Plaintiff avers that the pedigree of said horse was not as warranted by the defendant, and that the said defendant never has furnished the secretary's receipt for such pedigree as agreed to have been done on the part of the defendant.

"4. Plaintiff avers that said horse was not a good foal getter, and by reason of the above premises plaintiff has sustained damages in the sum of $5,000.

"Wherefore plaintiff prays judgment against said defendant for the sum of $5,000, together with costs of suit."

To this the plaintiff in error filed an answer, in which he admitted the sale of the stallion to defendant in error on the day stated, and further answered as follows:

"Defendant denies that the sum of $2,000, or any other sum, was paid by the plaintiff to the defendant for said horse, but alleges that plaintiff merely exchanged the said horse, Knight of the Shires, for a certain jack, a horse, and a town lot in the town of Wymore, Nebraska, and the plaintiff's note for $600, and that the said plaintiff finally traded to this defendant for said note a couple of mares and a couple of colts; that no money was ever received by defendant from plaintiff for said horse, and that the value of all the property received by defendant in the exchange did not exceed the sum of $700; that the amount of $2,000 was fixed by plaintiff and defendant as a trading price, the same being fictitious and wholly regardless of the true value of the property exchanged, and largely in excess of the same.

"3. Defendant further answering says that he denies that he warranted the said horse as alleged in plaintiff's petition, and this defendant denies that the plaintiff relied upon any warranty or statements made by the defendant, or that he was induced thereby to trade for the said horse, and defendant alleges that prior to and at the time of the trade for said horse the said plaintiff had knowledge that the said horse, Knight of the Shires, was not registered in the stud-book of England, but that said horse was eligible to registry upon the mere payment of the registration fee of one pound, or about $5.

"Defendant further answering says that he denies each and every allegation in said petition contained, not herein expressly admitted or denied."

The reply to this answer was a general denial. From the record and the statements made in the briefs filed in this court we gather that the case was tried in the district court and a verdict rendered for defendant in error, which

·on motion for a new trial by the losing party was set aside and a new trial ordered. The result of the second trial was a verdict and judgment thereon for the same party. The case was brought to this court on error and reversed and remanded. (For opinion see 30 Neb., 264.) In the district court, after the case was returned there on March 2, 1891, there was filed by plaintiff in error a motion to require defendant in error to give new and additional se-·curity for costs. This motion was supported by an affidavit. On hearing, the motion was overruled and an exception taken as appears of record. A trial was had to the court and a jury on April 4, 1891. The jury returned a verdict in favor of defendant in error, in which the amount ·of his damages was assessed at $1,154. A motion for a new trial was filed by plaintiff in error, which was submitted and overruled, and judgment entered on the verdict. To secure a review of the proceedings in the case, since it was returned from this court to the district court, counsel for Watson have prosecuted error proceedings to this court.

The warranty upon which this action was founded, and for the alleged breach of which the defendant in error was given a verdict for damages, was as follows:

"DILLER, NEB., November 18, 1884.

"In consideration of two thousand ($2,000) dollars, the receipt whereof is hereby acknowledged, I have this day sold my imported black English draft horse, Knight of the Shires, to O. A. Roode, and hereby agree to warrant and defend the title to said horse from all claims whatsoever; and I also guaranty said horse to be a foal getter, and I further state that the enlargement of the horse's bag was caused by a kick, and in no way troubles him, and I further guaranty the said horse to be registered in the stud-book of England,—also his dam, as well as sire,—and will furnish secretary's receipt for such pedigree. It is further agreed that if said O. A. Roode is unable to pay a note bearing even date with this agreement from the proceeds

27

of the first year's services of said horse, he shall have the privilege of another year's time on two hundred ($200) dollars. JOSEPH WATSON."

Counsel for plaintiff in error contend and insist that the above instrument does not contain such a warranty, or such warranties as are alleged in the petition as the foundation of the action; that it is stated in the petition that the horse was warranted sound in every respect except an enlargement of the bag that was caused by a kick, and that there is no such warranty in the contract of sale. It will be remembered that the petition further states that the horse was warranted to be a foal getter, and the contract of sale states: "I also guaranty the said horse to be a foal getter, and I further state that the enlargement of said horse's bag was caused by a kick and in no way troubles him." The contract of sale may be fairly said to contain a warranty, first, of the title to the horse; second, that he was a foal getter; third, that the visible, apparent defect, the enlargement of the bag, was caused by a kick and did not trouble him as a foal getter, or otherwise; fourth, that the horse was registered in the stud-book of England. It was so construed in the former hearing of this case in this court. For the decision then rendered, see 30 Neb., 264; and to the interpretation then given it we now adhere, firmly believing it to be the correct one. See also the cases cited to support the rule of law announced, and more particularly those in support of the doctrine, where it is stated that "the seller may bind himself as against patent defects if the warranty is so worded." That the term "foal getter" meant that the horse would be able to do reasonable service in begetting foals, which was the meaning ascribed to it in the former decision. See *McCorkell v. Karhoff*, 58 N. W. Rep., 913, a late decision by the supreme court of Iowa, where it was held: "A warranty of a stallion sold for breeding purposes, that he was 'sound and healthy, and, with proper handling, a foal getter,' was

a warranty that he could do reasonable service as a foal getter, and the requirements thereof were not satisfied where, with proper handling, only eight mares out of fifty-five served were gotten with foal."

The evidence in the case at bar discloses that the horse was purchased for the stud, and that this fact was known to plaintiff in error at the time of the sale, and the warranties were asked and given with it in view; that the enlargement of the scrotum, or the injury to the horse, from whatever cause produced, rendered him almost entirely useless for breeding purposes; that the average percentage of colts produced equals sixty-five per cent, or about two-thirds of the number of mares served; that this horse served eighty mares during the season of 1885, of which number but fifteen were with foal, and only nine produced living colts, and further established that the injury affected the horse generally, and he probably died from the effects of it on June 16, 1886. The evidence was directed to the issues raised by the pleadings and submitted by the court to the jury and amply sustained its findings and the verdict rendered.

There was a warranty that the horse was registered in the stud-book of England, and that he was not is admitted. During the cross-examination of Roode he was asked, "Now, in answer to Mr. Hazlett's question, you say you relied upon the warranty? A. Yes. Q. Now then, didn't the defendant tell you at that time this horse was not registered in the stud-book of England?" This last question was objected to by counsel for Roode and the objection was sustained and an exception taken, and this ruling is one of the errors assigned. This question was presented to this court during a former hearing and then passed upon. It was held that the evidence was not competent, and the action of the court in rejecting it was sustained for the reason that, if received, its effect would be to contradict or vary the written contract. After a careful consideration of

the subject we are satisfied that the rule announced in the former decision is the correct one. Counsel contend that they were not seeking by the testimony offered, or endeavoring, to contradict or vary the terms of the written instrument, but to show that Roode knew the horse was not registered and did not rely upon the statement in the warranty in reference to the horse being registered. The question put to Roode did not ask him for his knowledge or lack of knowledge of the fact of the horse being registered, but called for a statement made in regard to it by the vendor, Watson, during the conversations and negotiations had prior to the time of the execution of the written instrument and which led up to and the culmination of which was its execution. The infirmity of the testimony sought to be introduced, and the reason for its exclusion, was that it was a part of the transaction between the parties and became merged in the written contract, and that its admission would directly contradict and render of no effect one material portion of the written contract. The general rule that such testimony will not be received is well settled. For cases more particularly applicable see *Smith v. Taylor*, 23 Pac. Rep. [Cal.], 217; *Koerper v. Jung*, 33 Ill. App., 144.

This also disposes of the assignment of error in which complaint is made of the refusal of the trial court to give instructions numbered eight and fourteen, requested by plaintiff in error, as they referred to the same subject-matter as the testimony which was excluded by the court, and which we have determined was properly withheld from the consideration of the jury; and if the evidence was incompetent it follows that instructions upon the same points were improper and the refusal to give them not erroneous. Complaint is made that instructions five and six, requested on the part of Roode and given by the court, were defective and should not have been read to the jury. These two instructions were upon the warranties as embodied in the

writing introduced in evidence and the breach of them, and
we think were applicable to the issues presented by the
pleadings and to which the evidence adduced in the case
was directed, and fairly submitted such elements of the ac-
tion to the jury, and that there was no error committed in
giving them.

Under the assignment that "the court erred in overrul-
ing the motion for a new trial" it is stated by counsel that
the motion should have been granted for the reason, if for
no other, that the jury took notes of the testimony and
copied the warranty, and took them to the jury room.   For
the facts in regard to this assignment we are referred to
the affidavit of J. E. Bush, which is as follows:

"J. E. Bush, after being duly sworn, upon oath deposes
and says that he is one of the above named defendant's at-
torneys in the above entitled action and assistant in the
trial of said action at the present term of this court; and
that during the trial of said action members of the jury
took notes of the testimony introduced on the part of the
plaintiff, and took with them such notes so taken, to their
room, and had them while they were deliberating upon their
verdict in said action; that one of the jurors upon said ac-
tion copied the warranty which plaintiff introduced in evi-
dence, and took said copy with him into the jury room, and
had the same in the jury room while the jury was consid-
ering upon the verdict in said action."

It will be noticed that there is no statement in the affi-
davit of which the above is a copy that neither plaintiff
in error nor his counsel knew, at the time of the trial and
prior to the retirement of the jury, that some of the jurors
were taking notes of the evidence, or that they carried such
notes to the jury room.   If error for the juryman or jurors
to take notes of the evidence and carry them to the jury
room for use during their deliberations, which we do not
decide, "in order to make the fact of such conduct availa-
ble as ground for a new trial,   *   *   *   no objection

having been made in court, it must appear that not only the defendant, but also his counsel, was not aware that the juror took the notes, and in the absence of a showing to the contrary it will be presumed that they knew it and consented to it." (Thompson, Trials, sec. 2585, and cases cited.)

The only other assignment of error which is argued in the briefs filed in behalf of plaintiff in error is that the court erred in overruling defendant's motion for additional security for costs. In stating the case we made mention of this motion and the affidavit in support of it. It may be true that the court erred in overruling this motion; but if so, the plaintiff in the district court having prevailed, and judgment having been rendered against the defendant, including costs, the fact that such motion was overruled ought not to work a reversal of the judgment, as it has in no manner injured him or prejudiced his rights. (*International & G. N. R. Co. v. Williams*, 18 S. W. Rep. [Tex.], 700.)

There is quite a number of other errors assigned in the petition, but as they are not referred to or noticed in the argument, according to the settled rule of this court, they will be deemed waived.

AFFIRMED.