H. F. BROWN v. M. H. DOYLE.[1]

November 3, 1897.

Nos. 10,836, 10,853—(45, 46).

### Sale of Breeding Stallion—Warranty of Quality.

*Held*, that the statements and representations alleged to have been made by the vendor of a stallion (bought for breeding purposes) as to its qualities as a breeder amounted to a warranty.

### Allegation of Fraudulent Warranty—Failure to Prove Fraud—Wilson v. Fuller, 58 Minn. 149, Followed.

Where the plaintiff alleges that certain representations, amounting to a warranty, were fraudulently made, and proves the warranty and its breach, but fails to prove the fraud, he may recover for a breach of the warranty. Wilson v. Fuller, 58 Minn. 149, followed.

### Same—Warranty as "Foal Getter."

When a stallion is sold for breeding purposes, a warranty that he is "a foal getter" means that he is capable of doing reasonable service as foal getter; that is, as good service as the average of horses reasonably suited for that purpose. The terms of the warranty would not be fulfilled by the fact that he was capable of occasionally begetting a foal.

### Same—Evidence as to Meaning of Term.

Where the evidence tends to show that the vendor warranted the horse to be a "sure foal getter," it is competent to show what is a reasonable or the usual percentage of mares which will get with foal as the result of breeding to a good or sure foal getter.

### Action for Breach of Warranty—Interest.

In an action for breach of warranty on the sale of a chattel, the vendee is entitled to interest on his damages from the date of the breach to the date of trial; and as such interest, by way of damages, is implied by law, it need not be specially pleaded.

### Excessive Damages—Requiring Reduction of Verdict.

*Held*, also, that there was no error in the court's denying plaintiff's motion for a new trial, on condition that the defendant remit from the verdict to the extent to which the damages awarded were excessive.

Appeal by plaintiff from an order of the district court for Meeker county, Powers, J., denying his motion for a new trial and reducing

[1] Reported in 72 N. W. 814.

a verdict and judgment of $850 in favor of defendant to $550.    Affirmed.

Peterson & Foster, for appellant.

John T. Byrnes and M. C. Brady, for respondent.

MITCHELL, J.

Action on a promissory note for $300 and interest, executed for part of the purchase price of a stallion.    The defendant counterclaimed damages for breach of an alleged warranty as to the qualities of the horse as a breeder.    The allegations of the answer are that, in order to induce the defendant to buy the horse, the plaintiff falsely and fraudulently represented and stated to the defendant that the stallion was a good, first-class horse for begetting colts, and that he would get with foal 40 per cent. of all mares that defendant would breed him to; that in reliance on such representations and statements and believing them to be true, defendant bought the horse and agreed to pay $900 for it; that these representations and statements were false and untrue, and known to plaintiff to be so when he made them.    It is also alleged that defendant informed plaintiff, at the time, that he wanted the horse for breeding purposes.

Such statements, even if honestly made, would, under the circumstances, amount to a warranty of the quality of the horse as a breeder, which was the purpose for which it was being bought.

It is no doubt true that fraudulent representations may give a right of action for deceit, although they do not amount to a warranty; but it does not follow that no fraudulent representation constitutes a warranty.    That depends on the character of the representations.    And when a party alleges that certain representations, amounting to a warranty, were fraudulently made, and proves the warranty and its breach but fails to prove the fraud, he may recover for the breach of the warranty.    Wilson v. Fuller, 58 Minn. 149, 59 N. W. 988.

The evidence on part of the defendant tended to prove that plaintiff represented and stated that the horse was "a sure foal getter," and would get with foal 40 per cent. of the mares served.    The evidence on part of the plaintiff tended to prove that he represented and stated that the horse was "a foal getter," but declined to guaranty that he would get with foal 40 per cent. of the mares served, as

that would depend on whether the mares were breeders, and on the way the horse was used and handled. As applied to a horse sold for service as a stallion, a warranty that he is "a foal getter" means that he is capable of doing reasonable service as a foal getter, or, otherwise expressed, that he is as good a foal getter as the ordinary run of horses reasonably fitted for such service. It requires no evidence beyond the term itself and the subject to which it was applied to show that such is the meaning of such a warranty. Its terms would not be fulfilled by the fact that the horse was capable of occasionally begetting a colt. McCorkell v. Karhoff, 90 Iowa, 545, 58 N. W. 913.

If the warranty was as testified to by the defendant, the last part would define the meaning of the first ("sure foal getter"), and would extend or limit, as the facts might appear, the meaning of that term if standing alone. But the jury would be at liberty to accept as true one part of the testimony of either party, and reject the other part as untrue. They might find that plaintiff warranted the horse as a sure foal getter, but did not warrant that he would get with foal 40 per cent. of the mares served by him. It was therefore competent for defendant to prove what percentage of mares served "sure foal getters" usually got with foal. It is not necessary to consider whether there is any difference in the legal import of "foal getter" and "sure foal getter," as applied to a horse sold for breeding purposes. The evidence was uncontradicted that this horse was neither; that a reasonable percentage of mares for a sure foal getter to get with foal is not less than 60 per cent.; that this horse only got with foal about 25 per cent. of the mares served by him; that a horse that would only get that percentage of mares with foal was worth nothing as a breeder; and that this horse was only worth $50 as a work horse, whereas, if he had been a good or sure foal getter, he would have been worth $900, the price which defendant agreed to pay for him.

The note sued on was executed contemporaneously with the sale of the horse, at which date, if at all, there was a breach of the warranty. The court instructed the jury that, if they found for the defendant on his counterclaim, they should assess his damages as of the date of the sale, at the difference between the value of the

horse if he had been as warranted and his value as he in fact was, and from this amount deduct the amount of the note as of the same date, and then compute interest upon the balance, if any, from that date to the date of trial, add the two together, and find a verdict for the amount in favor of the defendant. This was correct. In an action for breach of warranty a party is entitled to interest on the damages from the time of the breach; and damages which are implied by law or necessarily result from the facts stated as the cause of action need not be specially pleaded.

The verdict of the jury was: "We, the jury in the above-entitled action, find for the defendant and assess his damages in the sum of $850." This was over $200 more than the defendant was entitled to. In view of the testimony, it is evident that the jury merely found the amount of defendant's damages (the difference between the value of the horse if as warranted and his value as he in fact was) as of the date of the sale, but did not, on the one hand, deduct therefrom the amount of the note, or, on the other hand, compute interest on the balance from the date of the sale to the date of trial, as instructed by the court.

The court denied plaintiff's motion for a new trial on condition that defendant would remit from the verdict the sum of $300, which he did. This was too favorable to the plaintiff by the sum of about $87, the amount of interest on $550 from the date of the sale to the date of trial. Of this plaintiff has no reason to complain. The court had the power to deny the new trial, on condition that defendant consent to a reduction of the verdict; and, under the circumstances, there was no abuse of discretion in his doing so. The evidence was practically uncontradicted that, if defendant was entitled to recover at all, the measure of his damages as of the date of the sale was $850. If so, as the jury evidently found, all that was left to be done in order to ascertain the amount of the verdict was a mere matter of computation, which the jury failed to make.

This covers all the points raised by the assignments of error which we deem worthy of special notice. The result is that the judgment and order must be affirmed.