SAMUEL W. HAYES,
MATTHEW J. KANE,
JOHN B. TURNER,
R. L. WILLIAMS,
} Justices.

## NATIONAL BANK OF ANADARKO v. OLDHAM.

No. 380.  Opinion Filed May, 10, 1910.

(109 Pac. 75.)

1. SALES—Warranties—"Sure Foal-Getter." O., in selling a stallion to P. and others, warranted that he was a "sure foal-getter." Held that, such technical term as related to such a horse not being otherwise explained by evidence, it meant a reasonably sure foal-getter.

2. WITNESSES—Sales—Rescission of Contract — Admissibility of Evidence—False Representations. The allegations of the answer and the evidence tending to show that the price at which the stallion had been stood was one of the material warranties, and the vendor having been used as a witness on the part of the plaintiff to maintain other issues on his part, denied making the alleged warranty as to the price at which said stallion had previously been stood. Held, that it was error to exclude the evidence as to such alleged warranty from the consideration of the jury in their determining the weight of the evidence of such vendor.

(a) The vendor making false and fraudulent representations as to the facts which he asserted had actually taken place, to

wit, that a certain stallion had previously been stood at a certain price, whereby the vendees were induced to buy such stallion, held to be sufficient ground for rescission.

(Syllabus by the Court.)

*Error from District Court, Caddo County; Frank Bailey, Judge.*

Action by Junius Oldham against the National Bank of Anadarko. Judgment for plaintiff, and defendant brings error. Reversed and remanded for new trial.

*C. H. Carswell* and *A. T. Boys,* for plaintiff in error.

*A. J. Morris,* for defendant in error.

WILLIAMS, J. 1. Did the court err in instructing the jury as follows:

"The court instructs the jury that it is admitted by the plaintiff that the said Richard Oldham at the time he sold said horse to the makers of said collateral note represented said horse to be a good healthy and vigorous horse, also a sure foal-getter; but it is contended by the defendant that such representations were untrue, and that the said Richard Oldham at the time he made said representations knew them to be untrue, and this is one of the issues that you are to determine in this case, and as stated above the burden is on the defendant to prove to your satisfaction by a preponderance of the evidence that at the time said collateral note was executed the said horse was not a reasonably sure foal-getter, and that that fact was known to said Richard Oldham at the time he made such representations, and unless you can say that the defendant has proven by a fair preponderance of the evidence that said horse was not a reasonably good and sure foal-getter at the time he was sold to the makers of said note, then and in such event that fact would not be a defense in the action."

The plaintiff in error insists that the court substituted a provision in the contract between the parties that they themselves did not make, in that the court interpolated the word "reasonably" so as to make the contract mean a reasonably good, healthy, and vigorous horse and a reasonably sure foal-getter.

In the case of *McCorkell v. Karhoff,* 90 Iowa, 546, 58 N. W. 913, in the bill of sale, the stallion was warranted to be "sound and healthy, and, with proper handling, a foal-getter." In the petition,

besides averments of a breach of the warranty, it is averred that, to induce McCorkell to purchase the stallion, Hartley verbally represented the stallion to be a "sure foal-getter"; that he had personal knowledge of the fact that he was; that upon such representations McCorkell relied in making the purchase; that the representations were false and known to be so by Hartley, when made. The court said:

"There is dispute, in argument, as to the legal import of the warranty, wherein the horse is warranted, 'with proper handling, a foal-getter.' Appellee's construction seems to be that, if the horse could or 'did get foals,' the terms of the warranty are met. We are to construe the language of the instrument in the light of the manifest understanding of the parties at the time it was made, and that understanding may be known from the purposes of the sale, as then understood by both parties. As we have said, the horse was bought under a mutual understanding to that effect. Hartley surely understood that McCorkell accepted the warranty as of broader meaning than that any trifling percentage of foals would meet its requirements. He must have known that the warranty was accepted as meaning that the horse was a reasonably sure or safe foal-getter. If so, whatever may have been his understanding, he is bound by the understanding of the other party. * * * We think it was a warranty that the horse could do reasonable service as a foal-getter, in view of the fact that he was bought exclusively for such a use."

The term "sure foal-getter" is a technical phrase in parlance pertaining to such horses. Evidence was permissible for the determination of the per cent. of foals usually necessary to constitute a "sure foal-getter." None was offered. The court construed the contract and committed no prejudicial error. See *Glidden v. Pooler,* 50 Ill. App. 36; *Brown v. Doyle,* 69 Minn. 543, 72 N. W. 814; *First National Bank v. Robinson, Adm'r.,* 105 Iowa, 463, 75 N. W. 334.

2. Was there error in the court instructing the jury as follows:

"For the purpose of showing that said horse was not a good foal-getter as represented by Richard Oldham, evidence has been offered to the effect that said horse had been stood for prices less

than that represented by the said Richard Oldham, and in this connection you are instructed that such evidence is competent for you to consider in determining whether or not said horse had been overbred, and whether or not, at the time of the sale, he was a reasonably sure foal-getter, but is not competent for any other purpose and, in considering such evidence it is your duty to consider the same only for the purpose above stated."

The allegations of the answer and the evidence on the part of plaintiff in error tended to show that the price at which the horse had been stood was one of the material warranties or representations in the contract for the sale of the horse, and that such representation or warranty was false. If the vendor made such representations as an inducement for his sale, then and there knowing the same to be false, and upon the trial, as a witness for the defendant in error, in other material issues denied making such warranty or representation, the evidence contradicting him upon this material issue, it would seem, should be permitted to be considered by the jury in determining the credibility of the vendor as a witness in the case. 2 Wigmore on Evidence, § 1000, pp. 1156, 1157. Again, if the horse in question had been previously stood in the state within 100 miles of the place where he was to be stood by the purchaser, at a price above the ordinary, this would be of value to such purchaser in fixing the price at which such horse should be stood by him, to be able to represent with truth to a prospective patron that such horse had been stood previously for a high price. Further, the fact that he was a horse of sufficient breeding qualities to demand a high price in the past, a prospective patron would be the more apt to use him.

In the case of *Somers v. Richard,* 46 Vt. 170, the court said:

"The first and third counts contain allegations that the defendant falsely represented that great sums of money had been received from the sale and disposition of said patent right, and that the defendant had received large sums of money from the sale thereof. Under that allegation, it was proper to be shown and found what the defendant represented as to sales, and the realizing of money therefrom, in Vermont, New Hampshire, and Massachusetts, and that the same was false, and fraudulently done,

and caused the plaintiff to make the alleged purchase. These particulars were a mode of substantiating the general allegation, and when that was proved to such an extent as to show that the alleged fraud was effectually perpetrated by the defendant upon the plaintiff, it gave the plaintiff the right to recover. It was not necessary for him to prove all he had alleged as to the means and arts practiced by the defendant, provided less than all were sufficient to give him a cause of action, and what were thus sufficient, were in fact proved and established."

In the case of *Irving v. Thomas,* 18 Me. 418, the court said:

"One is not bound by a false representation or warranty so clearly and obviously differing from the fact, that every person having the use of the common organs of sensation must know it to be erroneous; for reliance is to be placed upon the knowledge which these afford rather than upon the statements of any one. This, however, is not a case of that description. It has been decided also, that the seller is not bound by representations respecting the value of the property sold, because it is a matter which may be equally known to both parties. A representation relating to the income or rent of an estate does not come within this rule for the reason that the knowledge of it may be, and usually is, confined to one party; and the other can be presumed to ascertain it accurately only from him, or from those standing in a confidential relation to him. Hence one making such a false representation is bound by it. *Leakins v. Clissel.* 1 Lev. 102; *Lysney v. Selby,* 2 Ld. Raym. 1118; *Bowring v. Stevens,* 2 C. & P. 337; *Cross v. Peters,* 1 Greenl. 389 [10 Am. Dec. 78]."

See, also, *Mitchell v. Zimmerman,* 4 Tex. 75, 51 Am. Dec. 717; *Coon v. Atwell,* 46 N. H. 510.

It is insisted by the defendant in error that the action of the court cannot be termed error, for the reason that the evidence in regard to the false representation as to the amount the horse had been stood for was offered only for the purpose of showing that the horse had been overbred. In this, we cannot concur. Such alleged false representations were testified to by more than one witness, one of whom stated that as to the price a breeding horse had been stood for, if it was at a low rate, and he was of good appearance and his colts were all right, that that would indicate that he had been overworked, and that under such circumstances he would

be flooded with work. We find nothing in the record where the plaintiff in error limited solely to such purpose the evidence offered to prove the misrepresentation on the part of the vendor of the horse, so as to justify the instruction herein complained of. Such instruction seems to be prejudicial error.

In view of the fact that this case must be sent back for a new trial, it is not essential to pass on the other points raised, as such questions may not arise again. The case is accordingly reversed, with instructions to grant a new trial.

All the Justices concur.