# LENA NELSON v. MARTIN L. GJESTRUM and Another.[1]

June 21, 1912.

Nos. 17,622—(150).

**Measure of damages.**

Reynolds v. Franklin, 44 Minn. 30, and Stickney v. Jordan, 47 Minn. 262, adhered to as to the measure of damages in actions of deceit.

**Exclusion of evidence — prejudicial error.**

Even if, under the pleadings and evidence in this case, a ruling excluding testimony of impeachment of a witness on the ground that such testimony related to an immaterial matter might be sustained, when, however, after such ruling, the court instructs the jury that the issue to which such impeachment was directed is material, it is *held* that the action of the trial court becomes prejudicial.

**New trial — surprise — request to charge.**

Where the court, before the final argument to the jury, indicates to counsel that his request to instruct the jury would be given to the effect that, if plaintiff was entitled to recover in the action, the measure of damages was the difference between the value of the property she received in the trade and what defendant falsely represented it to be worth, but instead thereof an instruction was given that the measure of damages was the difference between what she gave and what she received, it is *held* that the party whose counsel was thus misled may claim accident and surprise, resulting in an unfair trial.

**Cross-examination of witness.**

No error appears from the conduct of the court when counsel were guilty of improper language during the trial.

Action in the district court for Blue Earth county to recover $4,500, the difference between the actual value of certain premises and $12,000, the value as represented by defendants; to recover $396, being the difference between the actual rental value of the premises as they were on December 24, 1905, and $83 per month, the rental value represented by defendant; and to recover $200 dam-

[1] Reported in 136 N. W. 858.

ages resulting from defendant's permitting the premises to be left unoccupied, the freezing of the heating plant and breaking of pipes and radiators. The substance of the pleadings is stated in the opinion. The case was tried before Pfau, J., and a jury which returned a verdict in favor of defendants. From an order denying plaintiff's motion for a new trial, he appealed. Reversed and new trial granted.

*H. L. & J. W. Schmitt,* for appellant.

*S. B. Wilson,* for respondent.

HOLT, J.

On December 22, 1910, a contract was made between John J. Nelson, husband of plaintiff, whereby said Nelson agreed to exchange a farm of two hundred eleven acres in Nicollet county for a house and lot in Minneapolis owned by defendant. Nelson examined the house and lot before he entered into the contract. It is conceded that he acted for plaintiff in the transaction. A day or two thereafter, and pursuant to the contract, plaintiff conveyed her farm to defendant's wife, and defendant conveyed the house and lot to plaintiff.

The allegations of the complaint are that the defendant, with intent to deceive and defraud plaintiff, and inducing her to trade her farm, fraudulently represented that the defendant's house and lot were actually of the market value of $12,000, that it was rented for $83 per month to a bona fide tenant, that he had been offered $100 per month rent, and that he had been offered $7,500 in cash for the lot alone. It is further alleged that the lease was not bona fide, but that defendant had conspired with the tenant to deceive plaintiff into making the trade, and no rent whatever was to be paid; that the rental value was no more than $50, and the premises were of no greater value than $7,500. The defendant answered, denying any false representations, and attempted to set up a counterclaim in regard to misrepresentations of the value, size, and productiveness of the farm exchanged for the house and lot. The trial resulted in a verdict for defendant. Plaintiff appeals from the order denying a new trial.

The assignments of error raise the question of the proper rule of damages in actions of this character. The court in substance instructed the jury that, if plaintiff was entitled to recover, the amount of her damage would be the difference in the market value between the farm she parted with and the house and lot she received. Plaintiff contends that she was entitled to the benefit of her bargain, or, in other words, the recovery, if she established the deceit, should be the difference in the actual market value of the house and lot and what she would have got had the representations been true.

Her counsel earnestly insists that the rules of damages adopted by this court in actions of deceit is illogical and wrong, and not in accord with that of many other states, or with the late decisions in the states where the earlier decisions were of the same trend as our rule. And further it is said that this court, by the decisions in Fleckten v. Spicer, 63 Minn. 454, 65 N. W. 926; Brown v. Doyle, 69 Minn. 543, 72 N. W. 814; Scheerschmidt v. Smith, 74 Minn. 224, 77 N. W. 34; Howe v. Coates, 90 Minn. 508, 97 N. W. 129, and Stearns v. Kennedy, 94 Minn. 439, 103 N. W. 212, has receded from the rule first established by the decision of Reynolds v. Franklin, 44 Minn. 30, 46 N. W. 139, 20 Am. St. 540.

The first three cases cited are all upon covenants or warranties in contracts. In the case of Howe v. Coates, the court, in the language relied on by plaintiff, was referring to a claim for damages which the alleged fraudulent representations could not have caused; and, instead of repudiating the rule of damages established in actions of deceit, as announced in Reynolds v. Franklin, supra, the case of Stickney v. Jordan, 47 Minn. 262, 49 N. W. 980, following it, is cited as the law. In the Stearns case, supra, there was misrepresentation of the acreage of land conveyed; but the damages asked for this deficiency were less proportionately than the consideration paid therefor.

The measure of damages in actions for false and fraudulent representations, inducing a person to make a sale or exchange of property, where such actions are not based on the covenants or warranties in the contract itself, is not the loss of the bargain, but the loss sustained by parting with something of greater value than the

value of that obtained in the transaction. It may appear illogical to say that, where one has, without deceit, made a contract for the sale of property, he may, if for some misfortune his title fails, be held to the good bargain made by the other party; but, had he induced such other party to enter the contract by the use of deceit, he is only liable to return what he got in the deal.

As applied to the practical everyday transactions of men, the rule may, however, have its advantages, although justly open to criticism when compared to that which obtains where an action can be predicated upon the breach of an agreement or covenant in a contract. We may suggest that the present case is an illustration of what may be done. The written contract is absolutely silent as to any representations except as to the acreage of the farm, nothing at all as to representations of value or the character of either tenant or the lease, or the house and lot. How easy, is it not, for the one with the most elastic conscience to establish misrepresentations, and secure large amounts on sharply conceived bargains. If bargains can be recovered for in actions for deceit, may we not look for persons going around seeking opportunities to be duped, so that they may recover for advantageous bargains? Suppose the defendant herein had been in a situation where he was virtually forced to sell at any price the property he believed to be worth $12,000, and which he actually represented to plaintiff of that value, thereby inducing her to buy; should plaintiff ethically or morally be entitled, if dissatisfied, to retain the property she got and recover $4,500 besides, or would it be more consonant with proper ideas of right and fair dealing to give her back the farm, or, if she prefers to keep the house and lot, to give her whatever the farm was worth above what she received?

Under the rule now prevailing in this state, and in the Federal courts, one who has been defrauded in a deal may call upon the court for protection against loss by having returned that which he parted with in kind, or its money value. This rule does not permit him to profit by a sharp bargain. Transactions are often made where on one side there has been innocent misrepresentation of material facts—fraud in law, nevertheless—while the other party, through

the unfortunate situation of the former, has been able to drive an unconscionably advantageous and hard bargain. Does justice require that such an one should have his pound of flesh?

But we are not going into a defense of the rule at this time. It is now stare decisis in this state, having been so repeatedly approved and applied by this court that in the absence of any impelling reason it ought to stand. It was first announced in Reynolds v. Franklin, supra, and since followed in Redding v. Godwin, 44 Minn. 355, 46 N. W. 563; Stickney v. Jordan, supra; Fixen v. Blake, 47 Minn. 540, 50 N. W. 612; Wallace v. Hallowell, 56 Minn. 501, 58 N. W. 292; Mountain v. Day, 91 Minn. 249, 97 N. W. 883; Ritko v. Grove, 102 Minn. 312, 113 N. W. 629; Hanson v. Hellie, 107 Minn. 375, 120 N. W. 341; Knight v. Leighton, 110 Minn. 254, 124 N. W. 1090; Selover, Bates & Co. v. Freeman, 111 Minn. 318, 127 N. W. 9; and Freeman v. F. P. Harbaugh Co. 114 Minn. 283, 130 N. W. 1110.

The rule established by these cases is the one adopted by the Federal courts and by many state courts. The trial court did not err in instructing upon the measure of damages.

But we are of opinion that a new trial should have been granted in this case. Plaintiff alleged a conspiracy between defendant and his tenant to induce plaintiff, by falsehood, to make the trade, and that the tenant's lease was not bona fide, as it was represented to be. It is also averred that the tenant conducted a house of ill fame; but there is no allegation that there was any misrepresentation touching the character of the house. Under this situation, the tenant having occupied the premises less than a month and a half when the trade was made, the house being located in a respectable neighborhood and having borne a good reputation before that time, and there being no testimony offered by plaintiff tending to establish knowledge on the part of the defendant of any objectionable feature in the tenant's business or occupation in the house, if any there were, the ruling of the trial court excluding evidence of impeachment of the two witnesses called by plaintiff to testify, unnecessarily perhaps, to the good character of the house run by the tenant, could be upheld on the ground that it was impeachment on an immaterial

issue, had not the court submitted the issue of the character of the house to the jury.

But in the charge to the jury great stress was placed on the proposition whether or not the tenant leased and operated the house as a house of ill fame; this language being used:

"Now, all the evidence in regard to this leasing, as to the conditions of the lease, and the letter in relation thereto, all this should be taken by you into consideration and carefully weighed, to determine whether or not the house was occupied as a house of bad repute by Anna Haugen during the time she occupied it, and whether or not the defendant knew thereof or was a party thereto in any way. Now, weigh all this evidence carefully, because upon this evidence in quite a measure will rest your decision in this case. It is important testimony, as far as it goes."

By this instruction the court made the question of the character of the house material, and therefore the ruling excluding the testimony impeaching that of the two witnesses of plaintiff who had testified that the defendant conducted an orderly and moral business on the premises must be held to have been prejudicial. If the impeaching testimony was properly excluded, because directed to an immaterial issue, the jury's attention ought not to have been called to it as being an important factor in the case.

It may also be said that plaintiff, by accident and surprise, was prevented from having a fair trial. The record shows that both parties requested the court to give instructions to the jury when the testimony was closed on July 1, 1911. "The court then took a recess until July 5, at 2 p. m. During the recess the court stated to the counsel for the plaintiff that he would charge the jury as to the measure of damages, substantially as requested by plaintiff. Plaintiff's counsel argued the case to the jury upon the assumption that the court would charge the jury, on the measure of damages, substantially as requested by plaintiff." On plaintiff's request to charge as to the measure of damages, the value of the farm was wholly immaterial to consider or argue; under the charge given, and correctly so, the value of the farm became an essential fact for the

118 M.—19.

jury to determine. In this situation it may well be claimed that counsel was surprised, and the client's rights prejudiced.

Counsel for plaintiff also complains because the court did not accede to his demand that a reprimand or punishment be meted out to one of the opposing counsel, who applied an alleged improper designation to the method employed by plaintiff's counsel in cross-examination of a witness. From experience we know how difficult it sometimes is to restrain counsel, in the heat of a trial, from indulging in irritating, unseemly, and unprofessional remarks to each other. The insistence with which plaintiff's counsel pursued a line of cross-examination ruled out by the court gave some excuse for the obnoxious remark. We see nothing in the course taken by the trial court in this case to censure or disapprove of. Both counsel were rebuked by calling their attention to the fact that they must proceed with the case. If attorneys, in the cross-examination of witnesses, would remember that the witness is entitled to some consideration, and is not there to be badgered and insulted, we apprehend that their client's cause would be as well served, and they themselves would be more willingly accorded the consideration and courteous treatment they crave at the hands of each other and the courts.

We deem it unnecessary to consider the other assignments of error presented by the appeal.

Order reversed, and new trial granted.