## NUPEN et al. v. PEARCE.

(Circuit Court of Appeals, Eighth Circuit. August 4, 1916.)

No. 4611.

**1. BROKERS ⬅102—RELATION TO PRINCIPAL—LIABILITY OF PRINCIPAL FOR BROKER'S FRAUD.**

An owner of land placed it in the hands of a real estate agent for sale, stating the price he would accept net to him. Being advised that a sale had been made, he made a conveyance to the agent at the latter's request and received the price stipulated therefor. He had nothing to do with the sale made by the agent. *Held*, that he was not liable to the purchaser to whom the agent conveyed for any fraud or deceit of the agent inducing the sale.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 146; Dec. Dig. ⬅102.]

**2. TRIAL ⬅233(2)—INSTRUCTIONS—READING PLEADING TO JURY.**

Where defendants in an action file separate answers and make separate defenses, it is error for the court to read the answer of one to the jury as a part of its charge, when it contains allegations likely to influence the jury as to the liability of another defendant.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 528; Dec. Dig. ⬅233(2).]

**3. FRAUD ⬅59(3)—ACTIONS—MEASURE OF DAMAGES.**

The measure of the damages recoverable by a purchaser of land for fraud and deceit inducing the purchase is the difference between the value of what he parted with and the actual value of the land.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 62; Dec. Dig. ⬅59(3).]

In Error to the District Court of the United States for the District of North Dakota; Wilbur F. Booth, Judge.

Action at law by E. D. Pearce against K. M. Nupen and others. Judgment for plaintiff, and defendants bring error. Affirmed in part, and reversed in part.

S. E. Ellsworth, of Jamestown, N. D. (E. E. Cassels, of Ellendale, N. D., on the brief), for plaintiffs in error.

T. H. Null, of Huron, S. D. (Arthur Knauf, of Jamestown, N. D., and Null & Royhl, of Huron, S. D., on the brief), for defendant in error.

Before SANBORN, ADAMS, and CARLAND, Circuit Judges.

ADAMS, Circuit Judge. This action was brought in the District Court by Pearce, the defendant in error, against Nupen, Lane, and Wiley, to recover damages for alleged deceit and misrepresentation

practiced by them to bring about the sale to him of a half section of land in Kidder county, N. D. Defendants filed separate answers, each denying participation in the alleged deceit and misrepresentation. On the issue so joined the case was tried to a jury, which found for plaintiff against all the defendants, assessing damages at $1,697.25. Defendants prosecute this writ of error.

Some undisputed facts are these: In October, 1909, defendant Wiley was the owner of the E. ½ of section 15, township 138 N., range 73 W. of the fifth principal meridian, in Kidder county, N. D. Desiring to dispose of it, he employed the defendant Nupen, who was a real estate agent and doing business at Steele, not far from the land in question, authorizing him to sell it at $9 per acre net to him (Wiley). Afterwards Nupen entered into correspondence with defendant Lane, who resided at Ellendale, a distance of about 100 miles from Steele, who had property he desired to trade for land in Kidder county. Negotiations followed, resulting in an agreement, dated February 21, 1910, between Lane, whom Nupen had interested in the matter, and Pearce, the plaintiff, by the provisions of which Lane assumed and agreed to sell the land to Pearce at $22.50 per acre, and to accept in payment therefor a certain residence property situated in Letcher, S. D., valued at $4,000, subject to a mortgage, however, securing a debt of $1,500; the balance in notes of Pearce, secured by mortgage on the property in question. This agreement was made subject to the approval of the properties after inspection by the parties. On the following day (February 22d) Pearce and Lane, pursuant to an arrangement made by Nupen, met the latter at Steele, and the three went together to view the land in question. Defendant Wiley was not present at this inspection. On returning to Steele, plaintiff advised Nupen and Lane that he was willing to consummate the trade. Afterwards, and on March 3d, Wiley and his wife executed a general warranty deed of the tract in question to Nupen, and Nupen and his wife on the next day (March 4, 1910) executed a general warranty deed of the same tract to the plaintiff, Pearce. On March 2, 1910, Pearce and his wife executed a warranty deed conveying lots 7, 8, and 9, of block 11, in the town of Letcher, S. D., to one Clark, who had purchased the property from Lane. On March 12, 1910, Pearce executed two mortgages on the land in question, one to secure a note for $3,000, and the other a note for $1,920, each payable to Nupen. Nupen retained the one for $1,920, and assigned and delivered the other ($3,000) to Lane. Nupen paid Wiley $9 per acre, amounting to $2,880, and no more, for the land. The balance of the purchase money and property paid by Pearce for the land was divided between Nupen and Lane. So much for undisputed facts.

There was evidence tending to show that Nupen and Lane, on the occasion of the inspection of the land by Pearce, pointed out to him, who was ignorant as to its location, the W. ½ of the section, instead of the E. ½, as the property of Wiley which they were trying to sell Pearce (this W. ½ having the appearance of a fine flat tract of land), and represented to Pearce that there was no alkali, gumbo, or excessive sand on the land they offered to sell him, and that, with the ex-

ception of a small patch near a windmill, which they spoke of, the half section which they desired to sell was tillable land. There was evidence tending to show that these representations were false. There was also evidence, uncontradicted and conclusive, that the land was deeply covered with snow at the time the inspection was made, and that Pearce had reason to rely and did rely upon the representations made to him by Nupen and Lane as to the identity and character of the Wiley half section, and, generally speaking, there was evidence tending to establish plaintiff's cause of action, and also evidence to the contrary.

At its close each of the defendants moved the court to instruct the jury to find a verdict in their favor. These motions were denied, and the court charged the jury; but as no parts of the charge, except those presently to be referred to, have been brought here for our consideration, the jury were presumptively properly advised as to the general rules of law governing the case. The court included in its charge the following statements, which were duly excepted to:

(1) "As to the motion on behalf of the defendant Wiley (to instruct a verdict in his favor), I think it is true that there is little or no evidence there—certainly no evidence on which a verdict could rest—that Mr. Wiley himself made any misrepresentations in regard to this land, so that he cannot be held on the theory that he himself made any misrepresentations; and the question then arises whether there were two transactions here: First, a sale by Wiley to Nupen; and, second, a sale by Nupen to the plaintiff—or whether there was really and in fact only one transaction, with two or three steps to accomplish it. I am inclined to take the latter view, or at least I think it will be a question for the jury to say whether or not there was in fact two separate and distinct transactions. If they find that there were two separate and distinct transactions, a completed sale between Wiley and Nupen, which had nothing whatever to do with the other transaction between Nupen and Lane and the plaintiff, then the defendant Wiley would drop out of the case so far as damages were concerned. If, on the other hand, they find that Nupen was acting for Wiley, and that the deeds from Wiley to Nupen and from Nupen to the plaintiff were simply steps in one transaction, the deed running to Nupen for the purpose of convenience in carrying out the transaction, and enabling him to conveniently get his commission, then I think the defendant Wiley would be included with the other defendants. * * * Now, one of the first questions for you to determine in this case is: Was there but one transaction, or were there two or more transactions involved here? * * *"

(2) "The measure of damages in this case is the difference between the actual value of what Pearce parted with and the actual value of what he received, and these values are to be ascertained by you as of the time of the transaction; that is, on or about March 4, 1910."

The assignments of error challenge: (1) A large number of rulings of the trial court in the admission of evidence, offered by plaintiff, over defendants' objection; (2) the ruling of the trial court upon the defendants' motion for an instructed verdict at the close of the case; (3) the charge of the trial court to the jury, as already set forth, concerning Wiley's liability; and (4) the charge of the trial court on the measure of damages.

Counsel for defendants have not seen fit to make any argument, either orally or in writing, on the several assignments of error relating to the admission of evidence, neither have they in any respect con-

formed to the provisions of our rule governing such assignments of error. We shall, therefore, give no further consideration to them.

So far as the defendants Nupen and Lane are concerned, there can be no doubt about the sufficiency of the evidence to justify a submission of the case to the jury as to them. The only argument they make in their brief against it is that it appears affirmatively that Pearce did not rely upon any of their representations. We think this is not so. The evidence tends to establish such reliance, and it was for the jury to pass upon its sufficiency under proper instructions. This is all we need to say on that subject.

As to the motion for an instructed verdict by Wiley, this may be said: All that he appears to have done, according to the proofs in this case, was to place his land for sale in the hands of Nupen, a reputable real estate agent, whose business it was to find purchasers for land intrusted to him. Wiley fixed the sum of $9 per acre, net to him, as the price at which he would sell the land. He does not appear to have had anything further to do with the matter until Nupen advised him that a sale had been made, when he made a deed to Nupen, as requested by him, and received the consideration of $9 per acre therefor, in strict accord with his original proposition to Nupen, and nothing more. And such seems to have been the impression of the trial court. He observed:

"I think it is true that there is little or no evidence there—certainly no evidence on which a verdict could rest—that Mr. Wiley himself made any misrepresentations in regard to this land."

It is inconceivable, except for one thing, how a jury found a verdict against Wiley, and, judging from the observations of the trial judge, just quoted, it is apparent that he would not have submitted the case to the jury, so far as Wiley was concerned, except for the same thing.

Wiley filed a separate answer to the complaint of plaintiff. His answer contained an explicit and unequivocal denial of any misrepresentations made by him to Pearce, or any participation with the other defendants in any transactions leading up to the sale of the land to Pearce. In this way he obviously intended to stand on his own bottom, and defend himself in his own way. Lane, however, took a different course. He sought not only to protect himself, but injected statements in his answer which the court thought inculpated Wiley, and accordingly charged the jury as already set out.

[1] Apart from the statement found in Lane's answer to the effect that the two conveyances of land from Wiley to Nupen and Nupen to Pearce were part of one and the same transaction, we confidently assert there is no evidence in the case, or no reasonable inferences deducible from any evidence, which in the slightest degree connected Wiley, either acting by himself or through any others as his agent, with the transaction culminating in the sale of the land to Pearce. The answer of Lane would not have been competent evidence against Wiley if it had been offered in the usual course. If it had been so offered, it would have been clearly incompetent. Its vice was not extracted by being read by the court to the jury in its charge. In view of the

observations of the court made in connection with it, it must have been influencive and misleading to the jury, and doubtless produced a verdict against Wiley which otherwise would not have been rendered.

[2] We think the court erred in reading Lane's answer to the jury, and that the exception to the charge, as taken by Wiley, should have been sustained. We also are of opinion that the court erred in not directing a verdict in Wiley's favor, as requested by him, at the close of the case.

[3] We do not think Nupen or Lane can complain of the measure of damages given by the court to the jury; that is, the difference between the value of what Pearce parted with and the actual value of the property which he received. This is the rule approved by the Supreme Court of the United States for such cases as this. Smith v. Bolles, 132 U. S. 125, 10 Sup. Ct. 39, 33 L. Ed. 279; Sigafus v. Porter, 179 U. S. 116, 21 Sup. Ct. 34, 45 L. Ed. 113; Atwater v. Whiteman (C. C.) 41 Fed. 427; Glaspell v. Northern P. R. Co. (C. C.) 43 Fed. 900. See also George v. Hesse, 100 Tex. 44, 93 S. W. 107, 8 L. R. A. (N. S.) 804, 123 Am. St. Rep. 772, 15 Ann. Cas. 456, and cases cited. And notwithstanding the construction placed by the Supreme Court of North Dakota upon its statute fixing the measure of damages for deceit and misrepresentation in the sale of personal property, we do not feel at liberty to depart from the rule so approved by the Supreme Court of the United States.

The judgment against Nupen and Lane is affirmed, and that against Wiley is reversed, and the cause, as to him, is remanded to the District Court, with instructions to grant a new trial, when, unless the evidence is substantially different from that now presented, a verdict should be directed in his favor.