## HALLEN, Respondent, v. MARTIN, Appellant.

### (167 N. W. 314.)

(File No. 3587. Opinion filed April 12, 1918.)

1. **Damages—Fraud—Exchange of Realty—Misrepresentation of Value—Measure of Damages—Common Law Rule—Declaratory Statutes—Instruction.**

   The measure of damages, in tort actions for fraud and deceit by misrepresentation by defendant of the quality of land exchanged, is the difference between the actual value of the property at the time of the exchange and what it would have been worth if the representations had been true; and an instruction accordingly was proper; the measure of damages for breach of warranty of contract being identical with the measure of damages in such tort actions, under Civ. Code, Sec. 2293, providing that the measure of damages for breach of contract is the amount which will compensate the aggrieved party for detriment caused thereby, and Sec. 2312, providing the same rule of damages when applied to tort actions; both of said sections being declaratory of the common law; as is also Sec. 2305, providing that detriment from breach of warranty of quality of personalty is the excess, if any, of its value at the time, had the warranty of quality been complied with, over its actual value at that time.

2. **Statute—Declaratory of Common Law, How Construed, re Common Law.**

   In construing a statute declaratory of the common law, what was the common law prior to our Civil Code must be considered.

3. **Damages—Fraud and Deceit—Breach of Warranty, Measure of Damages—"Majority" Rule, "Minority" Rule—Statutory Rule Stated.**

Under the "minority" rule of damages in tort actions for fraud and deceit, the measure of damages is the difference between the actual value of the property sold, at the time of sale, and the price paid therefor by plaintiff; while the "majority" rule of damages is the difference between its actual value at the time, and what it would have been worth if the representations as to its value had been true. Held, further, that the legislative mind, by enactment of Civ. Code, Sec. 2286, providing for compensatory damages suffered from the unlawful act or omission of another, Sec. 2293, providing for damages for breach of contract in the amount which will compensate for detriment caused thereby, Sec. 2312, providing for damages in tort actions, in the amount which will compensate for detriment proximately caused thereby, and Sec. 2329, limiting amount of damages for breach of an obligation to what the injured party could have gained by full performance on both sides, intended to adopt a compensatory damage rule, being the so-called majority rule as above defined.

4. **Same—Damages Under "Majority Rule" Whether "Speculative?" —Prospective, Distinguished From Compensatory, Damages— Price Paid, When Immaterial.**

Damages under the "majority rule," which is the difference between the actual value and the value as represented by a party disposing of property, are not "speculative" within the meaning of speculative damages; which latter are "prospective" in nature; but damages or detriment sustained from loss of a bargain, already consummated, are not w'thin the rule of speculative damages, but are compensatory in nature, and the direct and proximate consequence of the fraud; in which cases plaintiff recovers for direct results of the fraud and deceit, under the majority rule, and the price paid by plaintiff for realty exchanged by him is immaterial; which case differs from that of an exchange of properties where defendant by counterclaim charges plaintiff with fraud and deceit, the price paid by plaintiff then becoming material under a cross-application of the majority rule.

5. **Same—Rule of, Similarity in Exchanges of Realty and Personalty.**

The rule of damages in relation to sale or trade of personal property, is applicable to sale or trade of realty.

Smith, J., concurring specially. Whiting, P. J., and Gates, J., dissenting.

Appeal from Circuit Court, Brookings County. Hon. CARL G. SHERWOOD, Judge.

Action by Peter Hallen, against W. B. Martin, Jr., to recover damages for fraud and deceit in exchange of realty. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals; plaintiff moving to dismiss the appeal. Motion denied, and judgment and order affirmed.

*Hall, Alexander & Purdy,* for Appellant.

*M. E. Culhane,* and *Olaf Eidem,* for Respondent.

(1)   To point one of the opinion, Respondent cited:   20 Cyc. 136, 132-4; Merberry v. Watson, (Mass.) 39 Am. Dec. 726; McCabe v. Desnoyers, (S. D.) 108 N. W. 341; Fargo Gas & Coke Co. v. Fargo Gas & Elec. Co. (N. D.) 59 N. W. 1066; Lunschen v. Wocknitz, (S. D.) 111 N. W. 632; Klaveness v. Friesz (S. D.) 145 N. W. 561; Volume 1, Brickwood Saskett Instructions to Juries, page 567, Sec. 831.

(4)   To point four of the opinion, Appellant cited: Thompson v. Hardy, 19 S. D. 91, 102 N. W. 299; Ganow v. Ashton, 143 N. W. 583; Klavness v. Freese, 145, N. W. 561; Civ. Code, Secs. 2312, 2329; Smith v. Bolles, 132 U. S. 125; Reynolds v. Franklin, 20 Am. St. Rep. 540 (Minn.); Woolenslagle v. Runals, 76 Mich. 545; Knight v. Leighton, (Minn.) 124 N. W. 1090; Beare v. Wright, (N. D.) 103 N. W. 632.

Respondent cited:  Texarkana, etc., Ry. Co. v. Neches Iron Works, (Tex.) 122 S. W. 64; Johnson v. Springfield (Mo.) 127 N. W. 692; Omaha Ry Co. v. Todd, (Nebr.) 58 N. W. 289; Mattern v. Alderson (Calif.) 123 Pac. 972; Hay v. Boggs (Wash.) 137 Pac. 474; 20 Cyc. 118, 42-3.

McCOY, J.  In December, 1909, the plaintiff, pursuant to an agreement in writing theretofore made, conveyed to defendant, subject to incumbrances, 360 acres of New Mexico land and a lot in the city of Brookings, S. D., and gave defendant a bill of sale of a blacksmith shop on said lot.  As a consideration therefor plaintiff received a deed of 640 acres of New Mexico land, and gave to defendant a mortgage of $2,880 thereon. Plaintiff took up his residence upon his newly acquired land in January, 1910, and in June, 1911, disposed of the same.  In 1912 he brought this action for $10,100 damages for fraud and deceit in defendant's representations as to the kind, quality, value, and fitness for agriculture of the land traded for, whereby he was induced to enter into the agreement for exchange.  Trial was

had to the jury, which rendered a verdict for plaintiff in the sum of $3,680, with interest. From the judgment and an order denying a new trial defendant appeals.

· Motion to dismiss appeal has been made based on the ground that since the appeal was perfected the appellant has taken a position inconsistent with his right to further maintain this appeal; but a majority of the members of this court are of the view that such motion is without merit, and the same is therefore denied.

There was much conflict in the evidence upon the issues of fact, as we view the evidence, the same was sufficient to sustain the verdict.

[1] A vital question urged by appellant is that the trial court, by instructions, submitted to the jury an erroneous measure of damages. The trial court instructed the jury that the measure of plaintiff's damages was the difference between what the property he traded for was worth and what it would have been worth if it had been as represented. Appellant contends that the measure of plaintiff's damages was the difference in value between what plaintiff got and what he parted with. This is a tort action, sounding in damages for fraud and deceit. Plaintiff alleged, and the jury so found, that defendant fraudulently deceived plaintiff as to the quality of the New Mexico land. Plaintiff did not seek a rescission of the contract of sale, but, electing to stand on the contract, brought this action for fraud and deceit. The only question here involved is, what is the proper rule or measure of damages applicable to a case of this character? There is what is termed a "majority" and a "minority" rule. 153 Iowa, 274, 133 N. W. 709, 38 L. R. A. (N. S.) 465, Ann. Cas. 1913E, 274. Under the minority rule in such cases, the measure of damage is the difference between the actual value of the property sold at the time of sale and the price paid therefor by plaintiff. The "minority" seems to be the rule adhered to by some of the federal courts and a very few of the state courts. The "minority" rule is well stated in Smith v. Bolles, 132 U. S. 125, 10 Sup. Ct. 39, 33 L. Ed. 279. By reason of the overwhelming weight of judicial decision of the state courts, the views of the best text book writers, and the provisions of our Code, we are inclined to the view that the "majority" rule is the

sounder and the one established in this state by our Civil Code. Under the "majority" rule, the measure of damages, in tort actions for fraud and deceit, is the difference between the actual value of the property as it was at the time of sale and what it would have been worth if the representations had been true. In Stoke v. Converse, 153 Iowa, 274, 133 N. W. 709, 38 L. R. A. (N. S.) 465, Ann. Cas. 1913E, 270, a very recent case, the Supreme Court of Iowa said:

"The overwhelming weight of authority in this country approves the allowance, as the measure of damages, of the difference between the actual value of the property at the time of the purchase and its value if it had been what it was represented to be."

The opinion in this Iowa case by Mr. Justice Ladd is well considered, reviews the authorities thoroughly, and should be carefully read and considered in passing upon this rule.

In Gunderson v. Mining Co., 22 N. D. 329, 133 N. W. 554, the Supreme Court of North Dakota, with a Civil Code precisely the same as exists in this state, said:

"This is an action for deceit, not for rescission. There is a vast difference between the actions, and the difference must constantly be kept in mind. * *. * The plaintiff * * * demands that the representations of the sellers be made good in damages. * * * His damages would be the difference between what his stock would have been worth at the time of the sale if as represented and what it was actually worth at that time. Or, stated a little differently, he can compel the sellers to make good their representations by paying damages for those things they have misrepresented. We must go back to the day the stock was sold, and determine how much more plaintiff's stock would have been worth had the statements made to him been true."

In Fargo Coke Co. v. Fargo Elec. Light Co., 4 N. D. 219, 59 N. W. 1066, 37 L. R. A. 593, a prior decision, the Supreme Court of North Dakota also said:

"It is obvious that these two rules cannot be reconciled. One gives to the party deceived the full benefit of his bargain. The other does not. We are clear that the best reason is with the doctrine that, where one is deceived and defrauded, he can recover as damages the difference between the value of what he would have obtained had the statement been true and the value

of what he actually received. This represents his actual loss by reason of the fraud of the seller, on the theory that he does not rescind the contract. Of course, if he sees fit to rescind for fraud, he can only recover back what he has paid. But if he desires to stand by the agreement, as he has a perfect right to do, he can logically say to the wrongdoer: 'If you had told me the truth, the property would have been worth so much. It is not worth so much, because it is not as you represented it. I demand that you make good the difference in money.'"

The logic and reasoning of this North Dakota decision by Mr. Justice Corliss seems to us to be unanswerable. In Spreckles v. Gorrill, 152 Cal. 383, 92 Pac. 1011, the Supreme Court of California, under a Civil Code also precisely the same as sections 2293 and 2312 of the Civil Code of this state, speaking of this rule, said:

."One who buys property is lawfully entitled to all the benefit of the purchase—that is, to the full value of the property he buys—regardless of the price he paid. And it is a fundamental principle of the law of fraud that where one has, by false and fraudulent representations as to the quality of property, led another to believe it to be possessed of valuable qualities, and thereby wrongfully induced the other to buy the property, presumably in order to obtain the benefit of property possessing those qualities, the seller will not be allowed to show as a defense to an action for such fraud that the property in its actual condition was worth the price paid or more. The real question in all such cases is whether or not the property, if it had been as represented, would have been of substantially greater value than its actual value in its real condition. The price actually paid is immaterial as an element in the cause of action, though it may be admissible evidence on the question of value.' * * * For example, in Murray v. Jennings, 42 Conn. 9, 19 Am. Rep. 527, the plaintiff exchanged a pair of oxen for a horse, upon the representation of the defendant that the horse was sound. The horse proved unsound, and the plaintiff sued for damages for the deceit. The horse, in its unsound state, was worth $125. If it had been sound it would have been worth $225. The oxen were worth only $100. Plaintiff recovered $100 as the difference between the value of the unsound horse and its value if it had been.

sound. This was said to be correct, and the value of the oxen held immaterial, the court saying: 'The law gives her [plaintiff] the benefit of the contract, and places her with respect to it, and to all her rights under it, in the same position as if no fraud had been practiced upon her, and as if the horse was as sound and valuable as she had a right, from the defendant's representations to her, to believe it was.' "

In Drew v. Beall, 62 Ill. 164, the Supreme Court of Illinois. in a case involving an exchange of lands, said:

"The defendant had received the consideration agreed to be paid by the plaintiff, and the latter was entitled to have such a tract of land as this was represented to be, and if he has not got it his damages, by reason of not getting it, and the proper measure of damages, we think, is the difference between the actual value of the land and the value of such a piece of land as this was represented to be by the defendant.

"Such is the measure of damages in an action for breach of a warranty on a sale of personal property. * * * And it is the same in an action for a deceit in a sale. * * * And the same rule seems to obtain upon the sale of real estate where the action is for deceit in relation to its quality or condition."

In Antle v. Sexton, 137 Ill. 410, 27 N. E. 691, affirming 32 Ill. App. 437, the Supreme Court of Illinois also said:

"The theory of the action is that for the fraudulent and deceitful representation of the defendant, inducing plaintiff to make a contract which he would not have made otherwise, and by which he has been damaged, he should have his remedy, and this regardless of any remedy the law might afford upon the contract itself. * * * We also agree with the views expressed in the appellate court opinion in respect to the measure of damages. * * * The rule adopted was the difference in value between the saw timber obtained and what would have been obtained if there had been eighty acres of it; that is, calculate a shortage of fifty acres at the price per acre which it was shown to be worth. * * * In Field, Dam. § 706, the rule is stated thus: 'In cases of fraudulent representations of the quality of property sold, the general rule of damages is the difference between the value of the property as it is and what it would be if the representations had been true.' To the same effect see 2 Sedg. Dam. 559, where,

after a similar statement of the rule with regard to personal property, the author adds: 'The same rule, I apprehend, holds upon the sale of real estate where the action is for deceit.' "

In the case of Whitney v. Allaire, 1 N. Y. 305, in considering this rule, the New York Court of Appeals said:

"The last question relates to the damages. The rule given to the jury was as favorable as the plaintiff had a right to require. The measure of damages in an action upon a warranty, and for fraud in the sale of personal property, are the same. In either case they are determined by the difference in value between the article sold and what it should be according to the warranty or representation. * * * The same rule obtains, I apprehend, upon the sale of real estate, where the action is for deceit."

In the state of New York the Court of Appeals has at all times applied this rule in deceit actions. Benedict v. Trust Co., 91 App. Div. 103, 86 N. Y. Supp. 370; Krumm v. Beach, 96 N. Y. 398; Hubbell v. Meigs 50 N. Y. 480; Vail v. Reynolds, 118 N. Y. 297, 23 N. E. 301. In Morse v. Hutchins, 102 Mass. 439, the Supreme Court of Massachusetts, in a tort action for deceit, said:

"It is now well settled that, in actions for deceit or breach of warranty, the measure of damages is the difference between the actual value of the property at the time of the purchase and its value if the property had been what it was represented or warranted to be. * * * This is the only rule which will give the purchaser adequate damages for not having the thing which the defendant undertook to sell him. To allow to the plaintiff (as the learned counsel for the defendant argued in this case) only the difference between the real value of the property and the price which he was induced to pay for it would be to make any advantage lawfully secured to the innocent purchaser in the original bargain inure to the benefit of the wrongdoer, and, in proportion as the original price was low, would afford to a protection to the party who had broken, at the expense of the party who was ready to abide by the terms of the contract."

The clear philosophy of this Massachusetts case is that to apply the minority rule is to place a premium on fraud and deceit, because oftentimes the defendant, under the minority rule, would get out much easier by virtue of his fraud and deceit

than if he had only been guilty of a breach of contractual warranty. The clear import of the foregoing cited decisions is that the rule or measure of damages in tort actions for deceit is precisely the same as in actions ex contractu for breach of warranty.

Logical demonstration and proper interpretation and construction of the provisions of the Civil Code of this state clearly and unerringly indicate that the measure of damages for breach of warranty of contract is identical with the measure of damages in tort actions based on fraud and deceit. Section 2293 of the Civil Code provides that the measure of damage for breach of contract "is the amount which will compensate the party aggrieved for the detriment * * * caused thereby." Section 2305 provides that the detriment caused by the breach of a warranty of the quality of personal property is the excess, if any, of the value which the property would have had, at the time to which the warranty referred, if it had been complied with, over its actual value at that time. These two sections of our Civil Code are merely declaratory of the common-law rule as to the measure of damages for breach of warranty, to the effect that the purchaser, in case of breach of warranty, could recover as damages the difference between the actual value of the property and what the property would have been worth had it been as warranted. Section 2312 provides that in tort actions the measure of damage "is the amount which will compensate for all the detriment proximately caused thereby." Precisely the same rule or measure of damage provided for by section 2293 for breach of contract. Both these sections 2293 and 2312 are declaratory of the common law. Fairbanks v. Williams, 58 Cal. 241. And both sections establish the same measure of damages. Crow v. Canal Co., 130 Cal. 309, 62 Pac. 562, 1058. Section 2329, Civil Code, provides that, notwithstanding the provisions of this chapter, no person can recover a greater amount of damages for the breach of an obligation than he could have gained by the full performance thereof on both sides. These sections of our statute should all be construed together, and so as to give force and effect to each and all thereof. The clear import of section 2329 is that a person may recover in damages for the breach of an obligation all that he could have gained by a full performance thereof

on both sides. This is a general section, applicable alike to damages arising from breach of contract as well as those arising from the breach of an obligation not arising from a contract. Where there has been a breach of an obligation not arising from a contract, such as a tort based on fraud and deceit, under the minority rule it would be impossible for the plaintiff to recover the amount he would have gained by full performance on the part of the defendant, because, if the property had been as represented by defendant, the plaintiff would have received the value of the property as it was represented to be. We are therefore of the view that this section 2329 comprehends and establishes the majority rule in tort actions; that is, that the respondent is entitled to recover the difference between the actual value of the property and what it would have been worth if it had been as represented by appellant.

[2, 3] These sections of our Civil Code being declaratory of the common law, what was the common law, prior to the existence of our Civil Code must be considered in construing these sections. The decisions heretofore cited from states not having a Civil Code like ours clearly indicate what was the common-law rule in relation to this subject. In Drew v. Beall, Antle v. Sexton, Whitney v. Allaire, Krumm v. Beach, and Morse v. Hutchins, supra, it is held that the measure of damages for breach of warranty under a contract, and for fraud and deceit in a tort action, are the same. In some jurisdictions it was held that in tort actions the minority rule was the measure of damages. With these two common-law rules in view—the majority and minority—it is clear that the legislative mind of this state, by the enactment of sections 2286, 2293, 2312, and 2329 of our Civil Code, intended to adopt a compensatory damage rule, being the majority rule, as indicated by the foregoing cited decisions from New York, Illinois, Massachusetts, and Connecticut, and other decisions of like import of other jurisdictions. Sections 3300 and 3333 of the Civil Code of California, in their language establishing the rule for measure of damages, are precisely the same as sections 2293 and 2312 of our Civil Code. The Civil Code of California also contains a section precisely the same as section 2305 of our Civil Code, and the Civil Code of California also contains a section precisely the same as

section 2329 of our Civil Code, and it must be presumed that the Supreme Court of California in rendering the decision in Spreck-les v. Gorrill, supra, had these sections of their Civil Code in mind. The Civil Code of North Dakota also contains identically the same provisions, and we cannot presume that the Supreme Court of North Dakota in rendering the decisions in Fargo Coke Co. v. Elec. Light Co. and Gunderson v. Mining Co., supra, did not have in mind these sections of their statute law. We are also of the view that the Supreme Court of this state in the case of McCabe v. Desnoyers, 20 S. D. 581, 108 N. W. 341, being a case wherein the trial court instructed the jury in a deceit action that the plaintiff was entitled to damages for the value of a horse such as was represented by defendant and what the horse in fact proved to be, had in view the provisions of our statute, when it held that such instruction stated the law correctly as applicable to said case. Cooley on Torts (3d Ed.) 932, supports the major-ity rule, and states that the seller is bound to make its false rep-resentations good in damages. Sutherland on Damages also ap-proves the majority rule. Sutherland on Damages (3d Ed.) §§ 1171, 1172.

[4] Damages under the majority rule are not "speculative" within the meaning of speculative damages. Speculative dam-ages are "prospective" in their nature, such as the value of crops expected to be grown in the future upon lands which were the subject of sale, or the future earnings, rents, and profits of per-sonal property which was the subject of sale. But damages or detriment sustained by reason of the loss of the bargain, already consummated, are not within the rule of speculative damages, and never have been so considered. The plaintiff was entitled to the benefit of his bargain. Drew v. Beall and Murray v. Jennings supra. Damages for loss of the benefits of a bargain are com-pensatory in their nature and the direct and proximate conse-quence of the fraud. In these cases the plaintiff recovers for the direct results of the fraud and deceit. This is the logic of the majority rule, as disclosed by the decisions sustaining that rule.

There is one other proposition that should not be lost sight of in connection with the application of the majority rule in con-nection with the element of that rule that the price paid by plain-iff is immaterial, as illustrated by such cases as Murray v. Jen-
23—Vol. 40, S. D.

nings.    There is a class of cases where there had been an ex-
change of properties, and where the defendant by counterclaim
charged the plaintiff with fraud and deceit in connection with
the property received by defendant.    In such cases, which is not
this case, that which represented the price paid by plaintiff
would then be material and the subject of consideration, as there
would then be a cross-application of the majority rule.    But in all
those cases, such as this, where no fault or fraud is charged
against the plaintiff by the pleadings, the plaintiff is entitled to
the full benefit of his bargain, regardless of what consideration
he paid; he recovers what he lost by reason of defendant's fraud
and deceit, which would be the difference between the value of
what he actually received and what its value would have been if
it had been as represented by defendant.    As stated by Cooley,
under such circumstances the defendant would then be placed
in the same position as if the contract had been fully performed
on both sides, being the rule established by section 2329 of our
Civil Code.

[5]    It must also be observed that the rule of damages in
relation to the sale or trade of personal property is applicable
to the sale or trade of real property.    Drew v. Beall, Antle v.
Sexton, Whitney v. Allaie, supra; 2 Sedg. Dam. 559.

It must be kept in mind that this is not a case for the rescis-
sion or repudiation of a contract on the ground of fraud, but is a
case where the respondent plaintiff relies on the contract, and is
seeking to recover damages which are the proximate result of
defendant's false and fraudulent representations of the quality
of the thing sold; where the defendant must make good in
money damages that which plaintiff has lost by reason of such
fraud and deceit; that is the only amount which would compen-
sate plaintiff for the detriment caused by such fraud and de-
ceit; that is the rule established by our Civil Code; that is the
web and woof of the substance of the majority rule.    Hence we
are of the view, and therefore hold, that the learned trial court
committed no error by giving the instruction complained of. Other
assignments of error have been made, all of which have been
considered.

Finding no error in the record, the judgment and order ap-
pealed from are affirmed.

SMITH, J. (concurring).   I am fully persuaded that section 2312, Civil Code, prescribes the same rule of damages in deceit actions as in all other tort actions, viz. an amount which will compensate the injured party for the loss proximately caused by the tort, and that the common-law rule of damages in deceit actions was not intended to be, and was not, changed by the statute.   The real question, therefore, is, What was the rule of damages in deceit actions at common law?  In this, as in other matters, common-law courts differed in their views.   The real conflict in the decisions lies in the adoption of different methods of determining the amount to be awarded as compensation for the injury.   I think, therefore, the assumption that at common law the rule of damages in deceit constituted an exception to the general rule of damages in tort actions is erroneous.   A suggestion not infrequently found in cases which support the minority rule is that the result of the majority rule is to make the injured party better off than if no deceit had been practiced.   The conclusion is based upon the proposition that "if there had been no *deceit,* there would have been no bargain."   This statement is incorrect and in itself deceptive.   Wherever an action of deceit lies, there must have been false representations.   The false representations were the direct moving cause which brought the bargain into existence.   But the bargain would have been made just the same had the representations been true.   The correct proposition, therefore, is, "If the representations had been *true,* and not *false,* there would have been no *damages,*" not that there would have been no bargain.   Is it true, then, that damages under the majority rule make the injured party better off than he would have been had there been no deceit?

Where the remedy chosen is for damages for the deceit, the contract itself remains in full force and is unaffected by the action.   It will not be urged in this court ,and certainly cannot be urged by the wrongdoer, that the injured party was not entitled, under the contract, to receive an article such as the wrongdoer described.   The rights of both parties became fixed by the contract.   Each became the owner of that which he received under it.   The wrongdoer received the thing he was entitled to receive.   For that which he received he gave the injured party a thing which he represented to possess attributes which gave it

a certain value. The injured party was entitled to receive that which he was induced to believe he was receiving, and which he would have received under an honest contract. His right to receive the kind of thing contracted for was fixed by the contract. That he did not receive it was due to the deceit which wrongfully induced him to believe he was receiving it when he was not in fact receiving it. He had the right to rely, and did rely, upon the representations. The essential wrong was in the falsity of the representations relating to the value, or qualities, of the thing which the injured party was induced to accept instead of that which he was entitled to receive. It is apparent that, if the representations had been true instead of false, the injured party would have received property "answering to the representations made." The difference between its value, therefore, measures the loss or damage proximately caused by the deceit. It is suggested that under the majority rule the damages are measured by the enormity of the tort—the size of the misrepresentations—rather than by the effect of the misrepresentations. Precisely the same objection would lie to the rule of damages for breach of warranty. If the damages may be enhanced by the size of the warranty, why may they not be enhanced by the size of the false representations?

Both are purely voluntary acts on the part of the wrongdoer. In one case, the injured party relies upon the warranty; in the other, upon the representations for a tort which, in substance and in all its essential facts, is the same as a warranty. One is an obligation arising from a contract; the other, an obligation rising from a legal duty. The breach of the obligation has the same effect in either case. That one is an express, and the other an implied, obligation would not seem to be material in determining the amount which in either case will compensate the injury. In one case compensation is given for a false warranty; in the other, for a false representation. The majority rule awards the injured party an amount which makes good the representations. Bearing in mind that in actions both for breach of contract and for tort the rule is the same—compensatory damages—it is difficult to see why identical damages do not flow from false representations of facts which would flow from false warranties of the identical facts. The fact that the same damage flows from

the violation of a right created by contract, which flows from the violation of the same right created by law, is immaterial, so long as the rule of compensation is the basis of recovery in both instances. It is sometimes suggested, that where the party defrauded decides to abide by the contract and sues for damages, he is not entitled to receive anything except that which he determined to keep, together with damages for his "change of position." True enough; but what is meant by "change of position"? What would have been his "position" if the representations had been true instead of false? Plainly, he would have had an article of the kind represented. What did he receive? Plainly, an article of a different kind. That situation presents the "change of position" which was directly brought about by the deceit. If there had been no deceit there would have been a "change of position," but no damage.

It may be assumed that if the defendant had told the truth about the property there would have been no sale or exchange, neither would there have been any deceit, nor any action for damages. On the contrary, the action is based upon the fact that the defendant did not tell the truth. It is one thing to say that if he had told the truth there would have been no sale,— it is an entirely different thing to say that if the representations had been true there would have been no contract. The suggestion in certain of the decisions that rescission is an alternative remedy, and may be resorted to in cases of deceit rather than an action for damages under the majority rule is not convincing. The relief obtained under the minority rule is substantially the same as in rescission, but when the injured party chooses the remedy by action for damages for deceit he has the legal right to, and does, stand upon his contract. He should not be compelled to abandon his bargain by seeking rescission or accepting damages under the minority rule, which are merely the equivalent of rescission. This court did not adopt the minority rule in Lunscheon v. Wlocknitz, 21 S. D. 285, 111 N. W. 632. On the contrary, we said that:

"A purchaser of real estate has the right to rely upon the representations of the vendor touching the quality of the property, and may * * * recover compensatory damages."

Sections 2293, 2312, Civil Code; Ettlinger v. Weil, 94 App.

Div. 291, 87 N. Y. Supp. 1049. Mr. Sutherland in his work on Damages states that the majority rule has been recognized in the following and perhaps other states: Connecticut, Alabama, Illinois, Iowa, Kansas, Massachusetts, Maine, Michigan, Missouri, New York, Ohio, Texas, Washington, California, Georgia, Indiana, North Carolina, North Dakota, Oklahoma, Pennsylvania, Wisconsin, New Jersey, Arkansas, Oregon, Florida, Kentucky, New Hampshire, Mississippi, Vermont, Colorado, Nebraska, South Carolina, Utah, and Tennessee. Such an array of authority can hardly be disposed of by the assertion that the majority rule is founded upon unsound reasoning.

WHITING, P. J., and GATES, J. (dissenting). We are unable to concur in our colleagues' views as to the proper measure of compensatory damages for deceit in inducing a purchase or exchange of property, and we feel that the importance of the question justifies a statement of the reasons for our dissent. Two thoughts naturally suggest themselves: What is the proper measure of damage where there is no statute controlling? What is the measure of damages under section 2312, C. C.? We will undertake to answer these questions in the order named.

We believe little consideration should be accorded a legal proposition simply because it is a "majority" holding. The weight of judicial authority rests, not upon the number of jurists or text-writers that may unite in declaring the law upon a given subject, but upon the soundness—the convincing force—of the reasoning by which the views of such jurists or writers may be supported. When judicial authority is so weighed it will be found that the balance is overwhelming on the side of what our colleagues have termed the "minority" holding. We would commend a consideration of the reasoning found in Smith v. Bolles, 132 U. S. 125, 10 Sup. Ct. 39, 33 L. Ed. 279; Sigafus v. Porter, 179 U. S. 116, 21 Sup. Ct. 34, 45, L. Ed. 113; Rockefeller v. Merritt, 76 Fed. 909, 40 U. S. App. 666, 22 C. C. A. 608, 35 L. R. A. 633; Crater v. Binninger, 33 N. J. Law, 513, 97 Am. Dec. 737; Wallace v. Hallowell, 56 Minn. 501, 58 N. W. 293; Weaver v. Schriver, 79 Md. 530, 30 Atl. 189; Nelson v. Gjestrum, 118 Minn. 284, 136 N. W. 858; Zobrist v. Estes, 65 Or. 573, 133 Pac. 644; High v. Berret, 148 Pa. 261, 23 Atl. 1004; George v. Hesse,

100 Tex. 44, 93 S. W. 107, 8 L. R. A. (N. S.) 806, 123 Am. St. Rep. 776, 15 Ann. Cas. 456; Peck v. Deery, 37 Ch. Div. 541-549; and Sedgwick on Damages (9th Ed.) §§ 780 and 781.

We are not now called upon to determine whether, in case of deceit practiced for the purpose of and resulting in inducing a purchase or exchange of property, it may not often, with sound reason, be held that there is an implied warranty that the representations are true, and that, basing his claim of damages upon the breach of such warranty, the injured party should not be allowed to recover, for the breach of the contract, the warranty, just what is allowed under the "majority" rule in an action based on the tort. Cooley, at page 951 of his work on Torts, says:

"Where one, in selling personal property, makes positive representations of material facts, upon which the other relies, the vendor is held to the truth of these representations in a suit at law as much as he would have been in a suit in equity. But this is upon the ground that they constitute a warranty."

Neither are we called upon to discuss the wisdom of allowing damages in accordance with the "majority" rule. What we question is the soundness of the argument that the "majority" rule allows compensatory damages and that only; and that such rule is not an exception to the general rule governing damages for fraud or deceit, under which the injured party is held entitled to "such damages as will compensate him for the loss or injury actually sustained, as will place him in the same position that he would have occupied had he not been defrauded." 12 R. C. L. 451. If those who contend for the "majority" rule would frankly confess that it is based upon a promise entirely foreign to that upon which damages for deceit is ordinarily based—that it utterly disregards the principles that govern in actions for damages for all other torts—there would be left but the question of the wisdom of such a departure. We would announce these propositions, which we contend admit of no dispute, and which should be borne in mind at all times in the discussion of the questions before us: Every tort is a wrong by or through which the innocent party's position or condition, as such position or condition relates to his person or property, is changed for the worse. The injury suffered is by virtue of or an account of such change in position or condition. The damages suffered are

measured by such injury—by the amount or extent in which the
innocent party's personal or property rights have been changed
from what they were prior to the tort, by or on account of such
tort. The "majority" decisions are based on the theory that the
defrauded party is entitled to the benefit of his contract. Such
decisions attempt to base such holding upon the absolutely false
premise—that, if there had been no deceit, there would have been
a purchase or exchange of property under which plaintiff would
have received property answering to the representations made.
An action for damages for deceit in all cases, whether those in-
volving sales or exchanges of property or whatsoever the nature
of the case, must be based upon the premise that, if it had not
been for the deceit, there would have been no purchase or ex-
change whatsoever. In this case our colleagues say that the in-
nocent party is entitled to his bargain, when the very thing that
the injured party is complaining of, exactly as he would in an
action for rescission based on the deceit, is that, owing to deceit,
he never got a contract that gave him such bargain. The gist
of the cause of action for deceit is that there has been a change
in the innocent party's property—in his estate—brought about
by the deceit, and that this change was to plaintiff's loss.

Without loss there can properly be no cause of action for
deceit regardless of what representations were made. As said
in Alden v. Wright, 47 Minn. 225, 49 N. W. 767:

"The essential elements which constitute a cause of action
for deceit are well stated in Busterud v. Farrington, 36 Minn.
320, 31 N. W. Rep. 360, and one is that the party induced to act
has been damaged. He must have acted on the faith of the false
representations to his damage. A party cannot sustain an action
of this character where no harm has come to him. Deceit and
injury must concur (Doran v. Eaton, 40 Minn. 35, 41 N. W.
Rep. 244); or, as it has frequently been put by the courts, fraud
without damage, or damage without fraud, will not sustain the
action for deceit."

And it is the amount of loss that limits the recovery. As
said in Smith v. Bolles, supra:

"What the plaintiff might have gained is not the question,
but what he had lost by being deceived into the purchase."

And as stated in High v. Berret, supra:

"His actual loss does not include the extravagant dreams which proved illusory [the expectation based upon the representation], but the money he has parted with without receiving an equivalent therefor."

Or as stated in Sigafus v. Porter, supra:

"If the plaintiffs were inveigled by the fraud; * * * a judgment of the character just indicated would make them whole. * * * More they are not entitled to have at the hands of the law in this action."

Or as stated in Crater v. Binninger, supra:

"The principle of justice, and, as I understand, of law, is, that the party injured is to be compensated, at least to the extent that redress is awarded judicially, for the actual loss sustained. The effort is to reach this measure as near as possible, and unless in cases fit for punitive damages, nothing more than this is to be given. But the criterion contended for is in no sense compensation, but a mere arbitrary amount, bearing, it may be, no just relation to the quantum of damage."

We think no better or clearer statement of the reasons supporting the "minority" rule could be made than the following from George v. Hesse, supra, a decision which has been treated as a leading authority by the editors of three series of annotated reports:

"There is a conflict of authority upon the point; but it seems to us that the difference of opinion grows out of a confusion as to the nature of the cause of the action. This is not a case in which the plaintiff sues for the breach of a contract, for the contract has been performed by both parties. But it is a case in which the plaintiff sues to recover damages for a fraudulent representation by which he has been induced to enter into a contract to his loss. Clearly, we think the extent of his loss is the difference between the value of that which he has parted with and the value of that which he has received under the agreement. The contract in this case was not to convey a tract of land with a 'gusher' on it, but was to convey a certain tract of land, which was falsely represented to have a 'gusher' on it, which false representation was an inducement which led to the contract."

Our colleagues have cited both Cooley and Sutherland in

support of their views, but an examination of their works discloses that neither of them attempts to give his own views as to the correct rule. They both merely set forth what different courts have held. But it is quite different with the learned author of Sedgwick on Damages. In the ninth edition of this work, after setting forth the two rules, he (sections 780 and 781) discusses these rules, and to our minds the reasons he gives for supporting the "minority" rule are absolutely unanswerable. He says:

"If the fraud had been perpetrated by some third person, inducing the vendee to purchase, there can be no doubt as to the measure of damages; the plaintiff would then be entitled only to the difference between what he paid and what he received. Logically it should make no difference that the fraud was perpetrated by the vendor instead of by the third person. And to have a different rule might lead to peculiar results. Thus, suppose a fraud were jointly perpetrated by the seller and a third person. It is a strange rule of law which would give a different measure of damages in an action against one joint tort-feasor from that given in an action against the other, yet that would seem to be the consequence of the old rule."

Then, after announcing and discussing the reason often urged in support of the "majority" rule, "that the misrepresentation gives rise to an action for breach of warranty as well as an action for deceit, and it is absurd to apply a different rule of compensation according to the form of action," he says:

"It is true that the fraudulent representation also gives rise to an action on the warranty. But the converse is not true; an action of warranty may be brought when deceit does not lie. Hence it follows that the additional element of fraud creates a wholly distinct wrong, with a remedy peculiar to itself. The fact that under some circumstances this remedy does not give the vendee so much as the remedy for another wrong incidentally done is simply a reason for seeking that other remedy. * * * Adherence to logical principles can by no possibility work a hardship to the vendee. If his damages in an action of deceit, under the Smith v. Bolles rule, are less than under the other rule, he has simply made a blunder in suing for the fraud. He has the right to sue in assumpsit for breach of warranty."

And in conclusion he calls attention to the three actions that are open to the vendee and to what he can recover under each:

"The defrauded vendee has, accordingly, three alternative remedies: First, rescission and recovery of the consideration; second, an action for deceit and recovery for his actual loss, i. e., the difference between the value of what he parts with and of what he receives; third, an action for breach of any warranty contained in the contract of purchase, and recovery of the difference in values between the property as received and the value as warranted."

By no juggling of words, by no legal sophistry, can one advance any plausible reason why, in an action sounding in tort, a court should grant to the injured party, as compensatory damages, an amount that would place him in better shape financially than he would have been in if there had been no deceit, and hence no change in position as regards property. Such expressions as the following, while pertinent in an action based upon a breach of warranty, are absolutely foreign to any question presented in an action based upon a tort: "Plaintiff demands that the representations * * * be made good in damages;" "If he (purchaser) desires to stand by his agreement;" "The law gives her the benefit of the contract;" "The defendant has received the consideration agreed to be paid by the plaintiff, and the latter was entitled to have such a tract of land as this was represented to be." Such expressions disclose that the courts making same have in fact treated the representations complained of, not as a deceit—an inducement which brought about a contract through which one's estate was depleted—but as parts of the contract itself, as warranties, just as conceded in the above quotation from Cooley on Torts.

We think the fallacy of the "majority" view can well be demonstrated by a few illustrations. If A., through duress, perchance through the use of a gun, induces B. to pay him $5,000, and to take in exchange for such money a deed for a farm worth $4,000, and B. afterwards sees fit to keep the land and seek damages for the tort, it is perfectly clear that B.'s estate has been depleted $1,000, and the limit of his recovery, so far as it rests upon the land transaction, is $1,000, that which will make him

whole. Would B.'s estate have actually suffered any greater depletion—would it have taken any greater amount to make whole B.'s financial loss, the "detriment proximately caused" by the tort —if A., in addition to his more persuasive inducements, had falsely held out to B. that the farm possessed certain qualities which, if possessed by it, would have made it worth $6,000? Or if A. had used the more refined and less dangerous method, and through deceit alone had led B. to pay his $5,000 for the $4,000 farm, would the "detriment proximately caused" by the tort— the depletion of his estate—have been any greater than if B. had paid over the money through fear? Again, would it make any difference in the actual financial loss suffered by B.—the "detriment proximately caused" by the tort—the actual depletion of his estate—if B. gave the deed induced thereto by representations which, if true, would show the land to have been worth $10,000 instead of $6,000? Suppose the land were actually worth $4,000, but A. makes false representations as to four qualities the possession of which would enhance the value of land, each of which would enhance its value $500, or $2,000 in all; and suppose B. relies on only one of these representations, and yet, being of poor judgment, purchases the land when he would not if this particular representation had not been made. Under the "majority" rule one cannot base recovery on representations not believed—such representations could not be treated as warranties and suit be based upon their breach—so that, except under the "minority" rule, B. could not recover the amount he actually suffered from the deceit—the amount in which his estate was actually depleted through A.'s wrong. B.'s actual loss is just as great, and A.'s tort is as morally wrong, whether B. is led to part with his money for the $4,000 farm through his belief in the one representation as though he believed in them all. Suppose that B. had an option on C.'s $6,000 farm, under which option B. had the right to purchase it for $5,000, and A., through deceit, leads B. to forfeit such option, thus depleting B.'s estate to the value of such option, $1,000; should it make any difference in the amount which, as compensation, B. should recover against A., whether A. made one or fifty false statements concerning C.'s farm, or whether, if such statements were in fact true, C.'s farm would be worth $5,000 or only $2,000? Certainly not. To our

minds, it is no more illogical to allow a recovery of $4,000 as
compensatory damages for the tort in case A. had represented
C.'s farm to be worth only $2,000 than it would be to allow B.
to recover of A. $4,000 where A. induced B. to play $5,000 for a
$4,000 farm by making representations which, if true, would
show the farm to be worth $8,000.

Our colleagues suggest that the "minority" rule encourages,
and even often rewards, the wrongdoer. That might be good
ground for holding that, in a proper case, punitive damages
should be allowed. But the "majority" rule often prevents the
innocent party from recovering his actual loss, such rule limit-
ing damages to those allowed for breach of warranty. Take the
illustration above, where there were four false representations:
The "minority" rule would give the injured party the actual
damage suffered, $1,000, and thus replete his estate, and this
regardless of whether he was wronged—his estate depleted—
through his believing in one or in four of the representations;
while under the "majority" rule, his recovery would depend on
how many of the representations he believed. Thus the dam-
age allowed under the "majority" rule might be more, less, or
the same as the actual loss suffered.

As suggested by the court in Nelson v. Gjestrum, supra:

"How easy, is it not, for the one with the most elastic con-
science to establish misrepresentations and secure large amounts
on sharply conceived bargains. If bargains can be recovered
for in actions for deceit, may we not look for persons going
around seeking opportunities to be duped, so that they may re-
cover for advantageous bargains? Suppose the defendant herein
had been in a situation where he was virtually forced to sell at
any price the property he believed to be worth $12,000, and
which he actually represented to plaintiff of that value, thereby
inducing her to buy; should plaintiff ethically or morally be en-
titled, if dissatisfied, to retain the property she got and recover
$4,500 besides, or would it be more consonant with proper ideas
of right and fair dealing to give her back the farm, or, if she pre-
fers to keep the house and lot, to give her whatever the farm
was worth above what she received;"

As a matter of fact the "minority" view does not encourage
sharp practice on the part of either grantor or grantee. The fact

that an action based on the breach of warranty can be brought sufficiently discourages wrongdoing, where damages for breach of warranty would exceed those for tort; and, in cases where the damages for tort would be the greater, the fact that such action may be resorted to discourages fraudulent warranties.

There is an old saying that, "It is a poor rule that won't work both ways." Suppose the grantee, by deceit consisting in representing to the grantor that grantor's land is of poor quality, induces the grantor to sell land for $5,000 which is actually worth $6,000, but which if as represented by the grantee is only worth $4,000. The "minority" rule would give the grantor damages in $1,000, his actual loss. Knight v. Leighton, 110 Minn. 254, 124 N. W. 1090; Mountain v. Day, 91 Minn. 249, 97 N. W. 883. To be consistent, those courts upholding the "majority" rule should, in such a case, allow $2,000 damages, and yet to do so would border upon the ridiculous.

It is clear that the only premise upon which the "majority" rule could be based and give support to the claim that it is not an exception to the ordinary rule governing measure of damages for deceit—the rule that allows compensation—is: "If there had been no deceit there would have been a purchase or exchange of property under which plaintiff would have received property answering to the representations made," or, as suggested by one of our colleagues, "If the representations had been true, the sale or exchange would have been made just as it was made." If it were permissible, in an action for damages based on a tort inducing a sale or exchange, to start from such premise, the "majority" rule would be no exception. But the premise upon which an action to recover damages for deceit inducing a sale, as evidenced by the necessary allegations of a complaint, is: If there had been no deceit, there would have been no sale or exchange. It is only where deceit prevents a sale that an action to recover damages is properly based on the premise that, if there had been no deceit, the sale would have been made.

One of our colleagues has suggested that "under the 'minority' rule the false representations have no relevancy to the measure of damages," and that "the false representations as to quality and value are thus entirely eliminated as the proximate cause of the damage, and bear no relation to the compensation for the

wrong." Such statements are partly correct. We concede, in fact claim, that under the "minority" rule—which is identical with the general rule governing measure of damages for tort—there is no relation between the tort and the amount of compensatory damages recoverable; but we dispute the assertion that the "minority" rule entirely eliminates the tort itself—in the case before us, the false representations. It would seem that our colleague is of the opinion, and it is clear that the "majority" rule is founded upon the assumption, that compensatory damages should be measured by the tort itself—by the false representations; that the greater, the more numerous, the representations, in other words, the more heinous the tort, the greater should be the recovery, and this regardless of the results that flow from the representations. Nothing could more clearly reveal the fundamental unsoundness of the "majority" rule, and prove that it is in fact an exception to the rule governing the measure of damages for every other tort. Such rule places cause before effect when the whole law fixing the measure of damages for tort is based upon the proposition that compensatory damages should be, and in the case of every other tort known to the law are, measured by the result or effect of the tort rather than by the tort itself. It is because of this very fundamental error—this very fact that the "majority" rule has, as to this one peculiar tort, disregarded the rule governing damages for every other known tort—that the "majority" rule stands upon a basis both unsound and exceptional. Attempt to apply to any other tort the rule that there is a direct relation between the amount of compensatory damages that should be recovered and the number, the moral gravity, or the enormity of the torts committed, and see to what result one would arrive. It is true that there must be a tort, else there is no wrong upon which to base recovery; but unless the tort, as a cause, produces an effect detrimental to the innocent person, there can be no recoverable damages; and whenever compensatory damages are recoverable they should always be measured by the effect produced by the tort, and not by the tort itself. We cannot logically measure damages by the cause in the case of one tort, and by the effect in the case of some other tort, but, if we do, we should at least concede that we are using two rules for such measurements. If we are to measure damages by the tort, it

must be because the tort itself is an actionable wrong, regardless of the effect or result flowing therefrom. If, through the negligence of the carrier, the train runs off the track, should the right and extent of recovery be the same to all who were on the train —to him who escaped without any physical or nervous injury, to him who is slightly injured and to him whose body is so badly injured as to leave him a cripple for life? If the confidence man addresses the multitude, and, through the same deceit, leads some to invest their thousands, others their hundreds, while others are too wary and are not caught, should the amount recoverable by each be the same? It is clear that logically there should be one rule applicable alike to all cases, no matter what the nature of the tort may be, and that one rule is that compensatory damages for every kind of tort must be such amount as will compensate the injured party; in the one class of torts, for the injury to his person; in the other class of torts, for the injury to his property—the depletion of his estate.

But let us ask if there could be applied, in all cases of damages resulting from deceit, the rule that such damages should depend upon and be measured by the deceit practiced. On the other hand, can we not, in every case, apply the "minority" rule, and, in every case where damages are sought for deceit, measure the same by the result—the change in the estate of the injured person? Besides the illustrations we have already given, let us suggest the following: A. falsely represents to B. that B. is 21 years of age, and thereby induces B. to be a candidate for an office the salary of which is $2,000 per year. B. expends $500 in being elected, and then is held disqualified because of minority. B. sues A. for damages. What can B. recover? Can B. say to A., If the representations had been true, I would have had the office, and you are liable to me for $4,000, the amount of two years' salary—or $12,000 if it were a six-year office—or can B. recover but for the money he parted with and time he spent in canvass? Could B. say to A., You must make your representations good?

We repeat that every action seeking compensatory damages for injuries alleged to have resulted from a tort—no matter what the nature of the tort may be—is logically based on this one premise: Prior to the tort the innocent party occupied a certain

position or was in a certain condition in relation to some personal or property right; by such tort such position or condition was changed to his detriment. And we insist that, based upon such premise, the following rule as to measure of damages logically follows: The injured party is entitled to recover that amount which will recompense him in money for the loss or injury which he has suffered to his person or property through such change of position or condition; such loss suffered, and therefore the amount to be recovered, should not depend in any manner whatsoever upon the nature of the tort or torts that brought about the change of position or condition; neither should it depend upon, nor be measured by, the number of such torts, or the moral atrociousness thereof; but it should be measured solely by the nature and extent of the change of position or condition brought about by the tort or torts. Whenever any person, through any line of logical reasoning, can demonstrate that, if a man pays $500 for a $300 horse, being led to do so because of ten lies told him, he really suffers in dollars and cents ten times as much damage, through the depletion of his estate, as he would have suffered if he had paid the $500 for the $300 horse and been induced to do so through the influence of one lie, or through duress, then such person has laid the basis for a claim that the "majority" rule is not in fact an exception to the recognized rule governing measure of damages for every other known tort.

It is clear that the courts which have adopted the "majority" rule, have engrafted upon the law prescribing the usual measure of damages for torts an exception allowing such damages to be measured by the cause—the tort—and not by the effect—the change wrought upon the person or estate of the property of the injured party. This undoubtedly came about through the fact that the courts, adopting the "majority" rule, believed to hold otherwise encouraged wrongdoing. Morse v. Hutchins, 102 Mass. 439. And yet, in actual practice, it is often found that such rule gives to the injured party less than the "minority" rule, and in the great majority of cases gives either more or less than actual compensation. But whatever we might think of the advisability of providing one rule for a part of the cases that are based upon deceit, and another rule for all others based on torts including a large proportion of those based on deceit, we are not

at liberty to carry out our judgments, as our lawmakers, by section 2312, C. C., have prescribed the rule that must govern us and have enacted no exception thereto. It is well to note the several provisions of our Code applicable to the case before us. Section 1292, C. C., reads:

"One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

Section 1297, C. C., provides:

"* * * The extent of liability in such cases is defined by the title on compensatory relief."

Section 2286, C. C., reads:

"Every person who suffers detriment from the unlawful act or omission of another may recover from the person in fault a compensation therefor in money, which is called damages."

Section 2287, C. C., reads:

"Detriment is a loss or harm suffered in person or property."

Section 2312, C. C., reads:

"For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

One of our colleagues has very truly stated that section 2312, C. C., "may be paraphrased, without changing its meaning in the least, to say, 'The measure of damages is the amount which will make good to the innocent party whatever loss was proximately caused to him by the deceit.'" It will be found that but few of the "majority" states have a statute like our section 2312. We are not at liberty to give this section such a construction as will permit us to place an injured party in a better position financially —to increase his estate over what it would have been if there had been no deceit.

The question before us has never been passed upon by this court. It was not before the court in McCabe v. Desnoyers, 20 S. D. 581, 108 N. W. 341. Respondents have cited Lunscheon v. Wocknitz, 21 S. D. 285, 111 N. W. 632. We hardly understand why, as the opinion shows that the jury allowed dam-

ages in accordance with the "minority" rule, and in sustaining the verdict this court said:

"Under the facts and circumstances of the case, it is well settled that a purchaser of real estate has a right to rely upon the representations of the vendor touching the quality of the property, and may either rescind the transaction or recover compensatory damages."

Our colleagues have quoted from the decisions of the court of our sister state, which state has our section 2312. We cannot agree that the reasoning of the court as revealed in those decisions is sound. As early as 1890 the federal court speaking of this section, said in Glaspell v. N. P. R. Co. (C. C.) 43 Fed. 900:

"Upon this statute, and the cases of Smith v. Bolles and Atwater v. Whiteman [(C. C.) 41 Fed. 427], supra, I am of the opinion that the court, upon the trial of this action, should have instructed the jury that if they found for the plaintiff upon the other issues, that as to the measure of damages they should find the cash value of the land in the condition it actually was at the time of the sale, and deduct such value from the sum of money invested by the plaintiff in the land, and that difference, with interest added, in the discretion of the jury, would be the proper amount which the plaintiff was entitled to recover."

Since the action now before us was brought, the Circuit Court of Appeals, in Nupen v. Pearce, 235 Fed. 497, 149 C. C. A. 43, on appeal from the District Court of the United States for the District of North Dakota, disregarding that rule generally recognized by the federal courts under which such courts follow the construction put upon a state statute by the courts of such state, held in accord with the "minority" rule, saying:

"And notwithstanding the construction placed by the Supreme Court of North Dakota upon its statute fixing the measure of damages for deceit and misrepresentation in the sale of personal property, we do not feel at liberty to depart from the rule so approved by the Supreme Court of the United States."

In closing we would suggest that, if the lawmaking power of this state desired to establish, for deceit inducing the purchase or exchange of land, a rule of damages other than compensatory, it could, as it did in case of warranty of quality of personal prop-

erty (section 2305, C. C.), have enacted a statute expressly providing therefor, and declaring the damage to be the difference between the value of the property if it had been as represented and its actual value. Knowing that there were courts which, at common law, did allow damages in accordance with such rule, which rule was an exception to the ordinary rule governing measure of damage for torts, it would seem that, by omitting to recognize such exception, such lawmaking power had clearly disclosed an intention that in this state the same rule was to govern in all actions for damages based upon deceit, even those where deceit induces a sale or exchange of property, as governs in every other action for damages based upon tort. It is not for this court to usurp the power of the Legislature, even though we might believe the "majority" rule to be the wiser.